GLENDA SANDERS, ADMINISTRATRIX (ESTATE OF WILLIAM SANDERS), ET AL. *v.* OFFICERS CLUB OF CONNECTICUT, INCORPORATED, ET AL.
(10575)

PETERS, C. J., PARSKEY, SHEA, DANNEHY and BIELUCH, Js.

Argued January 8—decision released May 28, 1985

*F. Timothy McNamara,* with whom, on the brief, was *Thomas W. Mochnick,* for the appellant-appellee (plaintiff Charles L. Dickinson).

*Jacob H. Channin,* with whom, on the brief, was *David M. Roth,* for the appellee-appellant (defendant).

DANNEHY, J. These are cross appeals from a judgment after a trial by jury awarding damages to the plaintiff, Charles L. Dickinson, for personal injuries which he claimed were caused by the intoxication of a person to whom the defendant, the Officers Club of Connecticut, Inc., or its agents, servants and/or employees had sold alcoholic liquor when that person was in an intoxicated condition in violation of § 30-102 of the General Statutes.[1] We find no error.

The accident which underlies this litigation occurred at approximately 6:40 p.m. in the evening of February 19, 1976, on Route 84 in Hartford. Minutes earlier, William Sanders was riding as a passenger in the front seat of a pickup truck operated by Charles L. Dickin-

---

[1] General Statutes § 30-102 provides in pertinent part: "LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSONS, NOTICE OF ACTION. If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars. . . ."

son, going easterly on Route 84 in Hartford with a 1967 Ford Mustang owned by Sanders in tow. Both vehicles carried lighting devices designed for emergency use which were kept lighted in front of the truck and in the rear of the Mustang. In the vicinity of the Asylum Avenue entrance ramp to Route 84 Dickinson stopped the truck and got out to examine the hitch. Sanders remained in the truck until Dickinson observed that the hitch was loose on the passenger side of the Mustang. Sanders then got out and assumed a squatting position between the vehicles to tighten the hitch. Dickinson stood on the driver's side and to the rear of the truck. Minutes after Dickinson stopped, Louis Doerschuck ran the motor vehicle he was driving eastbound on Route 84 into the rear of the Mustang. The impact forced the Mustang to collide with the truck. Sanders and Dickinson were crushed between the truck and the Mustang. Following the collision, Sanders and Dickinson were taken by ambulance to a nearby hospital. There, Sanders died; Dickinson survived his injuries.

This case was commenced by the plaintiff, Charles L. Dickinson, as a separate and distinct cause of action prefaced by the words SECOND COUNT to recover damages for personal injuries which was joined in one complaint with a separate and distinct cause of action prefaced by the words FIRST COUNT for wrongful death brought by the administratrix of the estate of William Sanders, deceased. Both counts alleged a cause of action for damages based upon a violation of § 30-102 of the General Statutes, popularly known as the Dram Shop Act, against the Officers Club of Connecticut, Inc., the defendant.[2] The counts were identi-

---

[2] The defendants are the Officers Club of Connecticut, Inc., and Eugene Fortin, its permittee. To simplify, hereafter we refer to both as "the defendant."

cal except for the allegations as to the injuries received. See Practice Book § 138. Doerschuck was not made a party defendant in either action.

When the complaint was filed on June 7, 1976, the same attorney represented both the plaintiff and the decedent's estate. Thereafter, on September 29, 1976, a different attorney filed an appearance for the plaintiff Charles L. Dickinson only, "[i]n addition to appearance already on file of Riscassi & Davis." Then on March 17, 1978, the administratrix of the estate of William Sanders, deceased, was permitted to file a substitute complaint containing count one of the original complaint and afterward, on August 10, 1979, the plaintiff was allowed to file an amended complaint containing count two of the original complaint.

The answer to the plaintiff's amended complaint denied all of the allegations of the complaint except the allegations that the defendant conducted a club with restaurant facilities known as the Officers Club of Connecticut, Inc., at 360 Broad Street in Hartford where Eugene J. Fortin was permittee.[3] The answer contained special defenses charging contributory negligence, setting up a defense of assumption of risk, and pleading the one-year statute of limitations; General Statutes § 30-102; in bar of the action. The answer also asserted that a prior judgment for $55,000 entered in favor of the plaintiff and against Doerschuck operated to release and discharge the defendant from any liability to the plaintiff. [4]

---

[3] During the course of the trial, the defendant admitted that Doerschuck purchased alcoholic liquor from the defendant on February 19, 1976.

[4] "THIRD SPECIAL DEFENSE

"1. On July 18, 1979, a judgment was entered in favor of the Plaintiff, CHARLES L. DICKINSON, against Louis Doerschuck in the amount of FIFTY-FIVE THOUSAND ($55,000) DOLLARS, in a civil action wherein

The trial judge, *Higgins, J.*, sua sponte struck each of the defendant's special defenses without articulating any reason for his action. The jury awarded the plaintiff a verdict in the amount of $504,390, upon which the court rendered judgment. The defendant filed motions to set aside the verdict and render judgment in accordance with its motion for a directed verdict, or in the alternative, for a reduction of the jury's award. The court denied the motions to set aside the verdict and render judgment notwithstanding the verdict but reduced the jury's award to $20,000. The plaintiff appealed as to damages only. The defendant cross appealed, alleging that the evidence was insufficient to support the verdict, that the trial court erred in denying the motions to set aside the verdict and render judgment in accordance with the motion for a directed verdict, and claiming error in certain jury instructions as well as in several evidentiary matters.

The first issue is one of timeliness. The case was originally brought by the administratrix of the estate of

---

the Plaintiff sought from Louis Doerschuck money damages for the same injuries he is claiming in this suit.

"2. The satisfaction of said judgment releases and discharges the defendants.

"FOURTH SPECIAL DEFENSE

"1. On July 18, 1979, a judgment was entered in favor of the Plaintiff, CHARLES L. DICKINSON, against Louis Doerschuck in the amount of FIFTY-FIVE THOUSAND ($55,000) DOLLARS, in a civil action wherein the Plaintiff sought from Louis Doerschuck money damages for the same injuries he is claiming in this suit.

"2. Pursuant to § 30-102 of the Connecticut General Statutes Annotated, the Plaintiff, if he proves his allegation, is entitled to recover a maximum of TWENTY-THOUSAND ($20,000) DOLLARS money damages.

"3. The defendants are entitled to a credit of FIFTY-FIVE THOUSAND ($55,000) DOLLARS against any judgment rendered against them in this action, which judgment may not exceed TWENTY THOUSAND ($20,000) DOLLARS.

"4. Said judgment of FIFTY-FIVE [sic] ($55,000) DOLLARS in favor of CHARLES L. DICKINSON, as alleged in paragraph 1, negates any possible recovery by the Plaintiff against the Defendants in this action."

William Sanders, deceased, and Charles L. Dickinson, the plaintiff. One lawyer represented both parties. When the writ was filed on June 7, 1976, separate and distinct causes of action were joined in one complaint and each party's cause of action was set forth in a separate count. It clearly appears there was then a first count, representing the decedent's cause of action as distinct from that of the plaintiff in the second count. The second count setting forth the plaintiff's cause of action was not completely reiterative. Pertinent paragraphs of the first count were incorporated by reference. After different counsel appeared for the plaintiff, the attorney for the decedent requested permission to file a substitute complaint. Permission was granted and the decedent filed a substitute complaint on March 13, 1978. Then followed a period of inactivity until July 17, 1979, when, through new counsel, the plaintiff requested permission to file an amended complaint. The amendment simply inserted those paragraphs in the plaintiff's complaint which were originally incorporated by reference to the first count. The defendant objected. The objection was overruled.

No question is raised as to the power of the trial court to allow the amendment. The defendant contends that the filing of the decedent's substitute complaint on March 13, 1978, operated as a withdrawal of the original complaint and put the plaintiff's amended complaint within the prohibition of the one-year statute of limitations. See General Statutes § 30-102. The argument is so obviously untenable as not to require extended discussion. Since the substitute complaint, the plaintiff was always as he was before it was filed. The filing of the substitute complaint did not alter the plaintiff's position in any respect. Only the first count was out of the complaint. The second count remained. The amendment was necessary to comply with the technicalities of our procedure in order to set forth the alle-

gations previously incorporated by reference. Such an amendment can be allowed to a separable part of a complaint. The defendant's argument therefore fails.

The defendant has claimed error with regard to the admission and exclusion of evidence. All of the claims involve allegations of abuse of the trial court's broad discretion to determine the relevancy and admissibility of evidence at trial. The plaintiff's and the decedent's cases were tried together. Much of the difficulty of resolving the defendant's claims depends largely upon the unusual presentation of the facts. Practice Book § 3060F (c) (3) unmistakably requires that the brief set out " 'the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling and any exception.' " *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 523 n.5, 468 A.2d 574 (1983). The claims made clearly fail to comply with that requirement. Had it been followed, our task might have been easier and the briefs of the attorneys more directly to the point of showing plain error, or that enforcement of our rule will cause injustice. *State* v. *Vass,* 191 Conn. 604, 621, 469 A.2d 767 (1983). It may even be that an ample statement by the trial court could have supplied for us whatever might be deemed to be missing from the defendant's brief. We are under no duty to search a transcript of the testimony to find a ruling under attack. But we did. Here were two actions which were tried together. We were unable to determine either the order of trial or whether the objections and rulings applied to only one or both of the cases. Full-fledged review of the evidentiary claims is foreclosed by the defendant's failure in its brief to adhere to our established procedure.

The gravamen of the defendant's evidentiary argument is that there was no evidence sufficient to war-

348

rant the jury's finding that Louis Doerschuck was intoxicated at the time the defendant sold him alcoholic liquor. The defendant argues that the trial court should have rendered a directed judgment or set aside the verdict.[5] We set out the evidence in its aspect most favorable to the plaintiff to determine if upon any reasonable view of the evidence there is found any combination of circumstances from which a rational inference may be drawn in favor of the plaintiff. *Sauro* v. *Arena Co.,* 171 Conn. 168, 169, 368 A.2d 58 (1976). Viewed in any aspect, the evidence is uncontradicted that on February 19, 1976, the defendant sold alcoholic liquor to Doerschuck. Thus, the essence of the plaintiff's case against the defendant is that the intoxication of Doerschuck, existing at the time of any sale or sales of alcoholic liquor made to him by the defendant, constituted a proximate cause of the collision and the plaintiff's resulting injuries.

This case differs from the ordinary automobile collision suit in that the plaintiff is not suing Doerschuck, the operator of the car that collided with the Mustang. The plaintiff here is suing this defendant under § 30-102 of the General Statutes. The gravamen of the plaintiff's cause of action is not negligence or wanton misconduct but rather a violation of § 30-102. This statute establishes a cause of action that did not exist at common law. *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). It creates a new tort liability which is based upon a specified course of conduct and the consequences of such conduct. *Staples* v. *Lucas,* 142 Conn. 452, 456, 115 A.2d 337 (1955). The delict defined by § 30-102 is not the sale of liquor to create a condi-

[5] The defendant also claimed that the verdict was excessive. The trial court in its memorandum of decision denying the motion to set aside the verdict gives full answer to this contention: "the defendant has abandoned its claim that the jury verdict was excessive."

tion of intoxication. It is rather the sale of liquor to one who is already intoxicated. No causal relation between the sale and the injury is required. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 59, 119 A.2d 325 (1955). To recover under the statute, a plaintiff must bring himself squarely within its provisions. Id., 57. In each case, therefore, the trier must decide as a question of fact: whether there was (1) a sale of intoxicating liquor (2) to an intoxicated person (3) who, in consequence of such intoxication, causes injury to the person or property of another.

A proximate cause is a direct cause. It is an act or failure to act, followed in its natural sequence by a result without the intervention of any other superseding cause. *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 383, 441 A.2d 620 (1982). Where the sequence of events is unbroken by any intervening cause, an act or failure to act is a proximate cause of the result. Proximate cause is thus an act or failure to act which is a substantial factor in producing a result. *Mahoney* v. *Beatman,* 110 Conn. 184, 195, 147 A. 762 (1929).

The first essential element is proof that Doerschuck was intoxicated. To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor. Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies.[6] When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when

---

[6] Under our penal code, "intoxication" is defined as "a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body." General Statutes § 53a-7.

these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be "dead-drunk." It is enough if by the use of intoxicating liquor he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so. This was in substance the instruction given to the jury. There was no error in the instruction.

Considering the matter in the light most favorable to the plaintiff, we find the evidence to be undisputed that prior to the collision on February 19, 1976, Louis Doerschuck was at the Officers Club and while there purchased and drank alcoholic liquor. He had gone to the club directly from work at about 5:30 p.m. and remained for about an hour. The parties stipulated that the time of sunset on that day was at 5:28 p.m., or fifty-eight minutes before Doerschuck left the club. Earlier in the afternoon, Doerschuck had attended a farewell luncheon for a fellow employee who was retiring. It was a festive affair and Doerschuck availed himself of the occasion to drink "two perfect Manhattans, on the rocks," before returning to work. Later in the afternoon, he and others who attended the luncheon decided to extend the party to the Officers Club. As a result, Doerschuck cancelled a scheduled meeting in Bridgeport. At the club Doerschuck bought and was served four drinks. He admitted that he drank three, and vaguely recalled that one might have been spilled. It was not long before the other patrons in the club complained of his loud conduct. Doerschuck and witnesses in his behalf testified that his voice was always loud. In response to the complaints an employee at the club reprimanded Doerschuck and admonished him to be quiet. Moments later she warned him again with a stern glance. Doerschuck decided to leave.

There was testimony from employees of the club and members of his party that Doerschuck walked normally.

Doerschuck testified that he left to go home. He took the route to Bridgeport, the longest way to his home in Hartford. He was driving without lights. When he entered Route 84, he never saw the vehicles stopped on the highway. He did not recall seeing any lights on the vehicles. The officer who investigated the accident testified that in his opinion Doerschuck was intoxicated.

The burden was upon the plaintiff to prove (1) that Doerschuck was intoxicated, (2) that while so intoxicated, the defendant, by itself or its agent, sold him alcoholic liquor, and (3) as a proximate consequence of such intoxication existing at the time the sale was made, the plaintiff was injured by Doerschuck. The only contention of the defendant is that the plaintiff failed to sustain his burden of proving that Doerschuck was intoxicated at the time the sale of alcoholic liquor was made. We disagree. In our opinion, the pyramiding facts seem not merely plausible but inevitable. Doerschuck was drinking at noontime. He resumed his drinking immediately after work. His conduct was such that the patrons coming in contact with him complained to management. He was warned, not once, but twice, concerning his boisterous behavior. He left for home, but took a roundabout route. He drove, almost an hour after sunset, without lights. He was unable to recall many of the events of the evening and testified guardedly. He never saw the vehicles with which he collided on the side of the highway. On all of the evidence, we conclude that the jury reasonably could have found facts to prove that a state of intoxication existing in Doerschuck at the time of a sale of alcoholic liquor to him by the defendant continued through to, and constituted a proximate cause of, the collision.

In sum, "[a] trial court's refusal to set aside a verdict is entitled to great weight and every reasonable presumption in favor of its correctness must be given. *Katsetos* v. *Nolan,* 170 Conn. 637, 656, 368 A.2d 172

(1976). The refusal to set aside a verdict will not be disturbed unless it appears that there has been a clear abuse of discretion. *Birgel* v. *Heintz,* 163 Conn. 23, 27, 301 A.2d 249 (1972)." *Pitter* v. *Grippo,* 177 Conn. 398, 400, 418 A.2d 60 (1979). The evidence in the record is sufficient to sustain the jury's verdict. The trial court, therefore, did not err in denying the motions to set aside the verdict and render judgment in accordance with the motion for a directed verdict.

The defendant contends that the trial court committed reversible error by striking sua sponte the defendant's special defense of contributory negligence. The issue of contributory negligence was exhaustively discussed in the case of *Zucker* v. *Vogt,* 329 F.2d 426, 429–30 (2d Cir. 1964).[7] That case may not, strictly speaking, bind this court, but upon careful consideration of the nature of a claim under § 30-102, the reasoning of the opinion satisfies us that by the laws of this state, contributory negligence is not a valid defense to a Dram Shop Act suit.

The defendant also complains of the action of the trial court in striking its special defense of assumption of risk. We can see no ground upon which this defense can be maintained in this case. "A defense that a plaintiff seeking recovery upon the ground of negligence assumed the risk of the situation which brought about the injury is in the nature of a plea in confession and avoidance; the defendant may admit his own negligence and the plaintiff's lack of contributory negligence and still claim that he is not liable upon this ground." *French* v. *Mertz Co.,* 116 Conn. 18, 21, 163 A. 457 (1932). As we have already noted, the gravamen of the plaintiff's

---

[7] The defendant argued that the trial judge, T. Emmet Clarie, erred in ruling that contributory negligence does not constitute a defense in a Dram Shop action. On appeal to the Second Circuit, Judge Clarie's ruling that contributory negligence is not a valid defense to a Dram Shop suit was affirmed.

cause of action is not negligence or wanton misconduct but rather a violation of § 30-102.[8] *Staples* v. *Lucas,* 142 Conn. 452, 456, 115 A.2d 337 (1955). Assuming, without deciding, that under some circumstances a plaintiff can be held to have assumed a risk which has its basis in the violation of a statutory requirement enacted for his protection; but see *L'Heureux* v. *Hurley,* 117 Conn. 347, 357, 168 A. 8 (1933); that issue is not presented in this case. There is no evidence to indicate any awareness by the plaintiff of the intoxicated condition of the driver of the car that struck him.

On appeal, the plaintiff asks that we declare § 30-102 unconstitutional on the ground that the damage limitation in the statute "flies in the face of the true intent of the legislature" and, in addition, is contradictory and discriminatory "against all those, such as the Plaintiff, whose 'just damages' far exceed the prescribed monetary limits." It does not appear that any claim was made that this statute was unconstitutional at the trial, and, in fact, the plaintiff does not claim before us that such a contention was there made. The statute has been before this court repeatedly and has been upheld after arguments as to its validity. See, e.g., *Lavieri* v. *Ulysses,* 149 Conn. 396, 180 A.2d 632 (1962). It is settled in this state that changing the limitation is a matter for the legislature. If the damage limitation is inadequate, then the proper remedy is to increase the statutory limitation by legislative enactment rather than by overturning established judicial principles and precedents. *Nelson* v. *Steffens,* 170 Conn. 356, 361, 365 A.2d 1174 (1976). For these reasons the plaintiff cannot prevail on his appeal.

The only remaining questions relate to the application of the limitation clause of § 30-102 to the just damages awarded by the jury, and, how the limitation

---

[8] We note that the defense of assumption of risk has been statutorily abolished in all negligence actions. General Statutes § 52-572h.

should be applied. Section 30-102 limits "just damages" to the person injured "up to the amount of twenty thousand dollars." We find nothing in this statutory language, and the parties present no arguments, that this limitation should not apply to the jury verdict here. The parties do contest how the limitation of damages should be applied.

Neither party claims that the plaintiff was entitled to more than one recovery for the injuries he received. Both agreed he could collect but once even though he won against two parties. It was admitted that before this trial, judgment by stipulation was rendered against Doerschuck and the plaintiff received $55,000 for his injuries, pain and suffering and alleged disability. The defendant seems to assert that the trial court erred in accepting the jury's verdict of $504,390, which was in excess of the statutory limitation. Alternatively, the defendant argues that the satisfaction of the judgment obtained by the plaintiff against Louis Doerschuck is a bar to the prosecution of the present action and releases the defendant from any liability to the plaintiff. The plaintiff emphatically states that the jury award of just damages must stand. Alternatively, he argues that, if we do not declare the statute unconstitutional, the trial court did not err in accepting the jury's verdict in the amount of $504,390 so that the court could then make an appropriate determination and award $20,000 to the plaintiff.

The parties misconceive the import of the principle under discussion. Under the statute, the plaintiff was entitled to recover from this defendant just damages, up to the amount of $20,000. On the other hand, the plaintiff was entitled to but one satisfaction of what the jury found proven to be just damages. Under the law that prevailed at the time this case was tried, the trial court had the discretionary authority to "consider payments made to the plaintiff by joint tortfeasors in

determining the adequacy of the jury verdict and in making any appropriate adjustments thereto." *Fritz v. Madow,* 179 Conn. 269, 271, 426 A.2d 268 (1979).[9] The jury in this case determined that the plaintiff's just damages amounted to over half a million dollars. Given the vast disparity between the amount of the verdict and the sum of the stipulated judgment plus the maximum amount recoverable under General Statutes § 30-102, the plaintiff was entitled to recover the full $20,000 allowable under that statute. Here, the trial court properly accepted the jury's verdict against the defendant and thereafter reduced the damages to accord with the $20,000 statutory limit under General Statutes § 30-102 and entered judgment thereon.

There is no error.

---

[9] The statute establishing this procedure, Public Acts 1976, No. 76-197, was later declared unconstitutional in *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982). The proper procedure with regard to the out-of-court settlements of joint tortfeasors is now codified in General Statutes § 52-216a, which we recently construed and held constitutional in *Peck* v. *Jacquemin,* 196 Conn. 53, 491 A.2d 1043 (1985).