RUSSELL WENTLAND ET AL. *v.* AMERICAN EQUITY
INSURANCE COMPANY

KIMBERLY BLEAU *v.* AMERICAN EQUITY
INSURANCE COMPANY

AMANDA KISZKA *v.* AMERICAN EQUITY
INSURANCE COMPANY
(SC 16802)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

Argued October 28, 2003—officially released February 17, 2004

*Michael S. Taylor*, with whom were *Wesley W. Horton* and, on the brief, *Andrea Merkle*, certified legal intern, for the appellants (plaintiffs).

*Daniel P. Scapellati*, with whom was *James V. Somers*, for the appellee (defendant).

*Opinion*

BORDEN J. The dispositive issue in this appeal is whether the defendant insurer had a duty to defend certain actions brought against its insureds alleging injuries resulting from the insureds' service of alcohol, where the insurance policy contained a clause excluding claims for which the insureds may be liable by reason of "causing or contributing to the intoxication of any person . . . ." The plaintiffs appeal[1] from the judgments of the trial court, granting the defendant's motions for summary judgment and denying the plaintiffs' cross motions for summary judgment. The plaintiffs claim that the trial court improperly granted the defendant's motions for summary judgment because the underlying complaints did not allege that the injuries resulted from "intoxication," but merely from the "consumption of alcohol," thereby falling outside of the policy's liquor liability exclusion. We reverse the judgments of the trial court.

---

[1] The plaintiffs appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

The plaintiffs, Kimberly Bleau, Amanda Kiszka, and Russell Wentland, the administrator of the estate of the decedent, Marci L. Wentland,[2] who are assignees of the insureds of the defendant, American Equity Insurance Company, brought these consolidated actions against the defendant for breach of its duty to defend and to indemnify its insureds, and accordingly, for declaratory judgments that the defendant had a duty to defend and to indemnify. The defendant moved for summary judgment, claiming that it had no duty to defend any of the actions. The plaintiffs also moved for summary judgment, claiming the contrary. The trial court granted the defendant's motions, denied the plaintiffs' motions, and rendered judgments for the defendant accordingly.

The procedural history of these cases is as follows. The plaintiffs each brought a separate action, which were later consolidated, against Seneco Corporation and Antonio Senese[3] (Seneco), for damages sustained as a result of an automobile accident. The complaints alleged, among other things, that Seneco negligently had furnished alcohol to the driver of an automobile, who was less than twenty-one years of age. Seneco notified its insurer, the defendant, of the claim, but the defendant refused to defend the action on the basis of a liquor liability exclusion in Seneco's policy. Subsequently, the parties stipulated to a judgment in favor of the plaintiffs, whereby it was agreed that satisfaction of that judgment would be sought against the defendant.

The plaintiffs then each commenced a separate action, which were also later consolidated, against the defendant, claiming that the defendant had breached its duties to defend and to indemnify Seneco. The par-

---

[2] For purposes of clarity, we refer to Russell Wentland by name as a plaintiff, and to Marci L. Wentland as the decedent.

[3] According to the plaintiffs' complaints, Senese is an officer and director of Seneco Corporation, which owns and operates The Stadium Sports Bar and Club (The Stadium).

ties filed cross motions for summary judgment; the plaintiffs claimed that the defendant had breached its duty to defend and, consequently, its duty to indemnify, and the defendant claimed, to the contrary, that it had no duty to defend the underlying actions. On the basis of the liquor liability exclusion in Seneco's policy, the trial court held that the defendant had no duty to defend. Accordingly, the trial court granted the defendant's motions, denied the plaintiffs' motions, and rendered judgments for the defendant.

For the purposes of this appeal, the following facts, as alleged in the plaintiffs' complaints, are undisputed. On March 15, 1997, Bleau, Darlene Rodriguez and the decedent, who were all less than twenty-one years of age, went to a bar called "The Stadium" in Bristol. The Stadium, which was owned by Seneco, consisted essentially of two areas: a regular bar area where adult patrons could purchase alcoholic beverages; and a "juice bar" for patrons less than twenty-one years of age. In addition, The Stadium contained several common areas, including a dance floor and a billiards room, which were used by both adult and minor patrons. Adults who intended to purchase alcoholic beverages were required to wear paper wristbands to distinguish them from minors.

While at The Stadium that evening, Rodriguez consumed alcoholic beverages that had been provided to her by adult patrons of the bar. Subsequently, as Rodriguez was driving home during the early morning hours of March 16, 1997, with Bleau and the decedent as passengers, she lost control of her vehicle and collided head-on with a vehicle operated by Kiszka. As a result of the collision, Bleau, Kiszka and the decedent were injured, with the decedent's injuries being fatal.

Bleau, Kiszka, and Wentland, as administrator of the decedent's estate, each brought a separate action

against Seneco, claiming, among other things, that Seneco was negligent because it had failed to prevent Rodriguez from consuming alcohol.[4] The complaints, which were alike in all material respects, alleged that Rodriquez had lost control of her vehicle as a result of her "consumption of alcohol" at The Stadium.[5]

Following the commencement of the underlying actions, Seneco forwarded copies of the complaints to the defendant, requesting a defense under its commercial general liability insurance coverage. Seneco's insurance policy provided that the defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . [and] defend any 'suit' seeking those damages." The defendant, however, refused to defend Seneco because of a liquor liability exclusion in Seneco's policy. That exclusion provided in relevant part: "This insurance does not apply to . . . '[b]odily injury' or 'property damage' for which any insured may be held

[4] The complaints alleged, for instance, that The Stadium was negligently designed and constructed in that the bar's only dance floor, used by both adult and minor patrons, was located in the "juice bar" area. The complaints also alleged that Seneco: failed to supervise continuously the entrance between the "juice bar" and the common areas; failed to prevent adult patrons from carrying alcoholic beverages into the common areas and the "juice bar"; failed to provide distinct cups for alcoholic and nonalcoholic beverages; failed to warn adult patrons not to provide alcoholic beverages to minor patrons; and failed to warn minor patrons of the consequences of accepting alcoholic beverages from adult patrons.

[5] Bleau's complaint stated: "Said consumption of alcoholic beverages by Rodriguez at the . . . Stadium caused her driving ability to become impaired. . . . Due to Rodriguez' impairment, said vehicle . . . collided with a motor vehicle being operated by . . . Kiszka . . . ."

Kiszka's complaint stated: "Rodriguez' consumption of alcohol at The Stadium caused her to be unable to properly control her vehicle and she . . . collided head-on with . . . Kiszka's vehicle, causing the injuries and losses of which . . . Kiszka hereinafter complains."

Wentland's complaint stated: "Rodriguez' consumption of alcohol at The Stadium caused her to be unable to control her vehicle, which inability caused . . . [the decedent's] death."

liable by reason of: (1) Causing or contributing to the intoxication of any person; (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages."

Subsequently, the trial court, *Shortall, J.*, approved stipulated judgments in favor of the plaintiffs against Seneco.[6] The stipulations released all claims against Seneco, providing that satisfaction of the judgments would be sought only against the defendant. In addition, Seneco assigned to the plaintiffs all the tort and contract rights that it may have had against the defendant.

Following Seneco's declaration of bankruptcy, the plaintiffs each brought a separate action against the defendant, which subsequently were consolidated. The matter was subsequently heard on cross motions for summary judgment. The defendant argued that it had no duty to defend because the alleged negligent acts were not covered by Seneco's policy. According to the defendant, the "unambiguous language" of the policy's liquor liability exclusion barred "coverage for incidents related to Seneco's sale or service of alcohol." The plaintiffs argued, to the contrary, that the allegations in the complaints fell outside the exclusion, particularly their claim that Seneco had failed to warn the minors of the consequences of accepting alcohol. The trial court, *Berger, J.*, denied the plaintiffs' motions for summary judgment, granted the defendant's motion for summary judgment, and rendered judgments in favor of the defendant. Additional facts will be presented as necessary.

On appeal to this court, the plaintiffs claim that the trial court improperly granted the defendant's motion

---

[6] The plaintiffs and Seneco agreed that judgments of $50,000 would enter in favor of Bleau and Kiszka, and a judgment of $900,000 would enter in favor of Wentland.

for summary judgment because the allegations in the complaints fell outside of the liquor liability exclusion. Specifically, the plaintiffs argue that the language "[c]ausing or contributing to the intoxication of any person," which was contained in the exclusion, encompasses something more than merely being under the influence of alcohol, and operates to preclude coverage only if the injuries resulted from a person's "intoxication," not merely a person's "consumption of alcohol." In that regard, the plaintiffs contend, because the complaints alleged that the plaintiffs' injuries resulted from Rodriguez' "consumption of alcohol," as opposed to her "intoxication," the language of the exclusion did not operate to bar the duty to defend, and the defendant, therefore, breached its duty to defend the insureds in the present case.[7] The defendant argues for a broader reading of the exclusion, namely, that the exclusion operates to preclude the duty to defend for any claims related to the insureds' sale or service of alcohol. In that regard, the defendant claims that it did not have a

[7] The defendant claims that the plaintiffs have failed to preserve an adequate record for this claim. See Practice Book § 61-10 (appellant's responsibility to provide adequate record for review). Specifically, the defendant contends, because Practice Book § 64-1 (a) provides that the trial "court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor," and because the trial court did not articulate the precise ground for its decision, the plaintiffs were required to seek an articulation of the trial court's ruling. We disagree.

"The question of whether an insurer has a duty to defend its insured is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy. . . . In such circumstances, the facts are not in dispute and, because the reviewing court's review is de novo, the precise legal analysis undertaken by the trial court is not essential to the reviewing court's consideration of the issue on appeal." (Citations omitted; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395–96, 757 A.2d 1074 (2000). As we note later in this opinion, we read the trial court's decision as resting on subsection (1) of the liquor liability exclusion. Thus, an articulation of the trial court's ruling would not have provided this court with any additional information that would aid our review of the applicability of subsection (1) of the exclusion.

duty to defend the insureds because all of the plaintiffs' underlying claims were dependent upon the insureds' sale or service of alcohol. We agree with the plaintiffs, but we remand the case for consideration of other issues discussed herein.

Construction of a policy of insurance presents a question of law, over which our review is de novo. *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 700–701, 826 A.2d 107 (2003). "It is beyond dispute that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts [that] bring the injury within the coverage." (Citation omitted; internal quotation marks omitted.) *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 646, 679 A.2d 929 (1996). "If an allegation of the complaint falls even possibly within the coverage, then the [insurer] must defend the insured." (Internal quotation marks omitted.) *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000). Accordingly, an insurer's duty to defend its insured is triggered without regard to the merits of its duty to indemnify. See, e.g., *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 352, 773 A.2d 906 (2001) (insurer has duty to defend even if pleadings indicate that claim may be meritless).

"Although policy exclusions are strictly construed in favor of the insured . . . the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citation omitted; internal quotation marks omitted.) *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 409. The interpretation of an insur-

ance policy is based on the intent of the parties, that is, the coverage that the insured expected to receive coupled with the coverage that the insurer expected to provide, as expressed by the language of the entire policy. *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 351–52; *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, 247 Conn. 801, 805–806, 724 A.2d 1117 (1999). The words of the policy are given their natural and ordinary meaning, and any ambiguity is resolved in favor of the insured. *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 351–52; *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, supra, 805–806.

Applying those principles to the facts of the present case, and to the policy language at issue, we conclude that: (1) the trial court determined that the part of the liquor liability exclusion that precluded the duty to defend was the language regarding the "intoxication of any person"; (2) that language was not unambiguously applicable to the pleadings of the injured parties in their underlying complaints; and (3) therefore, the defendant had a duty to defend against the injured parties' complaints against its insureds. In this regard, it is not necessary for us to decide definitively what the word "intoxication" means as used in the policy. It suffices to conclude, as we do, that the word is sufficiently ambiguous that, when read in light of the injured parties' complaints, the duty to defend was triggered.

We first turn to a brief discussion regarding the basis of the trial court's decision in the present case. Relying on cases that had interpreted similar liquor liability exclusions, the trial court held that, "because the 'allegations of alcohol' are integral to and inseparable from the allegations of negligence, the liquor liability exclusion applies as a matter of law." Although the trial court did not specifically state which provision formed the basis of its ruling, it reasoned that "the allegations of

negligence are inseparable from the fact that Seneco either caused or contributed *to the intoxication* of Rodriguez." (Emphasis added.) In addition, the trial court referenced the language "caus[ing] or contribut[- ing] *to the intoxication* of Rodriguez"; (emphasis added); four times in the concluding paragraph of its memorandum of decision, but did not reference the language from either subsections (2) or (3) of the liquor liability exclusion.[8] Thus, we read the trial court's decision as resting on subsection (1) of the exclusion. Put another way, because the trial court determined that subsection (1) was sufficient to trigger the liquor liability exclusion, it did not explicitly discuss the applicability of subsections (2) or (3) of the exclusion in its memorandum of decision. Moreover, that is primarily how the parties have briefed and approached this appeal. We ordinarily decide appeals on the basis in which it was decided in the trial court, and briefed and argued in this court. See, e.g., *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000). Thus, we confine our discussion herein to the applicability of subsection (1) of the liquor liability exclusion, and we express no opinion as to the applicability of subsections (2) or (3).

The language of the policy concerning coverage in the present case provided in relevant part that the defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . [and] defend any 'suit' seeking those damages." The policy also contained a liquor liability exclusion, which provided in relevant part: "This insurance does not apply to . . . '[b]odily injury' or 'property damage' for which any insured may

---

[8] The only mention of subsection (2) of the liquor liability exclusion in the trial court's memorandum of decision was when the court quoted the exclusion to preface the discussion of its analysis. Subsection (3) was never mentioned.

be held liable by reason of: (1) Causing or contributing to the intoxication of any person; (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages."

The critical dispute between the parties is whether, under the facts alleged in the underlying complaints, the liquor liability exclusion precluded the defendant's duty to defend. In addition, the parties agree, at least as it relates to the defendant's duty to defend, that subsection (3) of the exclusion, which refers to "[a]ny statute, ordinance or regulation relating to" alcohol, is not relevant to this appeal.

Subsection (1) of the exclusion operates to bar coverage in circumstances in which an insured may be liable by reason of its "[c]ausing or contributing to the intoxication of any person . . . ." The applicability of that language to the present case rests on the meaning of the term "intoxication." As the ensuing discussion indicates, the word "intoxication" has various meanings in our law, depending on the context in which it is used. The common thread of these meanings, however, is that it does not necessarily mean being impaired by, or under the influence of, alcohol *to any degree.*

In defining "intoxication," the parties focus on *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349, 493 A.2d 184 (1985), but they come to different conclusions as to whether its definition triggers the liquor liability exclusion in the present case. In *Sanders,* we laid out the elements that a plaintiff was required to prove in order to prevail under our Dram Shop Act; General Statutes § 30-102; which permits a civil action against a person who sells alcoholic liquor to an intoxicated person. *Sanders* v. *Officers Club of Connecticut, Inc.,* supra, 349. In order to establish sufficiently that

a person was intoxicated under § 30-102, we stated: "To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor. Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, a visible excitation of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. When it is apparent that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, when these or similar symptoms result from the use of liquor and are manifest, a person may be found to be intoxicated. He need not be 'dead-drunk.' It is enough if by the use of intoxicating liquor he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so." Id., 349–50. On the basis of this definition of intoxication, and keeping in mind that any ambiguity ought to be resolved in favor of the insured, we conclude that the complaints in the present case did not necessarily allege that the plaintiffs' injuries were the result of Seneco's "[c]ausing or contributing to *the intoxication* of any person . . . ." (Emphasis added.) Accordingly, subsection (1) of the liquor liability exclusion did not relieve the defendant of its duty to defend the insureds in the present case.

The first sentence of the definition in *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 196 Conn. 349, states that intoxication is "something more" than merely being affected by alcoholic liquor. This is a plain indication that there may be levels of inebriation that are less severe than intoxication. Indeed, common sense dictates that one's behavior will be influenced to differing degrees depending on what, and how much, alcoholic liquor one had consumed. Similarly, alcoholic

liquor may tend to affect some persons differently than it does others, depending on a number of factors, for instance, a person's body weight, a person's tolerance to alcohol, and what other food or beverages, if any, a person has consumed within the same time frame. Thus, under our definition in *Sanders*, it is possible to be "affected to some extent by" alcoholic liquor, without being "intoxicated." Id.

By the same token, in another context, we have interpreted the *Sanders* formulation to imply that being "under the influence of intoxicating alcohol" is something less than being "intoxicated." *State* v. *Lonergan*, 213 Conn. 74, 92 n.11, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), overruled on other grounds, *State* v. *Alvarez*, 257 Conn. 782, 794, 778 A.2d 938 (2001). In *Lonergan*, the defendant was charged with driving under the influence of intoxicating liquor in violation of General Statutes § 14-227a, and manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b. Id., 76. At the time of the incident in question, in order to convict a defendant under § 53a-56b, the state was required to prove that the victim's death was the result of the defendant's " 'intoxication' "; id., 76–77 n.2; whereas, under § 14-227a, the state was required to prove merely that the defendant was " 'under the influence of intoxicating liquor . . . .' " Id., 76 n.1. In differentiating between "under the influence of intoxicating liquor" and "intoxication," we reasoned that, although "it is possible to be under the influence of intoxicating alcohol while not being intoxicated, it is impossible to be intoxicated while not, at the same time, be[ing] under the influence of alcohol." (Internal quotation marks omitted.) Id., 92 n.11; *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 196 Conn. 349–50. Although § 53a-56b no longer requires the state to prove that the defendant had been "intoxicated," but only that he had been

"under the influence of intoxicating liquor";[9] see Public Acts 1985, No. 85-147, § 1; our reading of the *Sanders* formulation in *Lonergan* reinforces the notion that intoxication may be "something more" than merely being under the influence of alcoholic liquor. *Sanders v. Officers Club of Connecticut, Inc.*, supra, 349.

Also in the motor vehicle context, General Statutes (Rev. to 1997) § 14-227a, which was in effect at the time of the alleged negligent conduct in the present case, differentiated between driving "under the influence of intoxicating liquor"; General Statutes (Rev. to 1997) § 14-227a (a); and driving "while impaired."[10] General Statutes (Rev. to 1997) § 14-227a (b). The offense of driving "under the influence of intoxicating liquor" required, among other things, that the offender be fined not less than $500, be imprisoned not more than six months, and have his or her driving privileges suspended for one year; General Statutes (Rev. to 1997) § 14-227a (h) (1); whereas the offense of driving "while impaired" was only an infraction. General Statutes (Rev. to 1997) § 14-227a (i). The legislature's recognition of the offense of driving while impaired, which carried a lesser penalty than did driving under the influence of intoxicating liquor, further informs us that our law recognizes lesser degrees of inebriation, some of which may not properly be characterized as intoxication.

Having concluded that there may be lesser degrees of inebriation that do not necessarily constitute "intoxication," at least as this court and our legislature have

---

[9] The same change was made to General Statutes § 53a–60d, which describes assault in the second degree with a motor vehicle. See Public Acts 1985, No. 85-147, § 2.

[10] The offense "operation while impaired" defined "impaired" as having a blood alcohol content in excess of 0.007, but less than 0.01. This offense was eliminated by the amendment of § 14-227a, effective July 1, 2002. See Public Acts, Spec. Sess., May, 2002, No. 02-1. Before the change, a blood alcohol content greater than or equal to 0.01 qualified as "operation while under the influence of intoxicating liquor" pursuant to § 14-227a (a).

defined the term, we turn to the plaintiffs' allegations against Seneco in the present case. Bleau's complaint stated: "Said consumption of alcoholic beverages by Rodriguez at the . . . Stadium caused her driving ability to become impaired." Kiszka's complaint stated: "Rodriguez' consumption of alcohol at The Stadium caused her to be unable to properly control her vehicle . . . ." Finally, Wentland's complaint stated: "Rodriguez' consumption of alcohol at The Stadium caused her to be unable to control her vehicle . . . ." Thus, for all material purposes, the underlying complaints against Seneco alleged that Rodriguez' *consumption of alcohol* caused her to be unable to control her vehicle, or caused her driving ability to become impaired.

The complaints did not allege that Rodriguez was intoxicated, or that she displayed any behavior[11] that would establish, as a matter of law, that she was intoxicated. Because the "allegation[s] of the complaint[s] [fell] even possibly within the coverage"; (internal quotation marks omitted) *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 409; the defendant had a duty to defend the insureds, at least with regard to subsection (1) of the liquor liability exclusion. The plaintiffs also point out that the defendant had the means to insert a broader liquor liability exclusion known as an "absolute liquor" exclusion, which states that "the policy does

---

[11] For instance, we have stated that "one of the most common indications of intoxication . . . [is] staggering in walking or running." *State* v. *Katz*, 122 Conn. 439, 442, 189 A. 606 (1937). The defendant relied on *Katz* at oral argument before this court, and urged this court to infer that, because the complaints alleged that Rodriguez lost control of her vehicle as a result of her consumption of alcohol, common sense would indicate that she *must* have been intoxicated. See id., 442–43 (evidence that person was staggering sufficient to support finding of intoxication). To the contrary, common sense indicates that she *might* or *might not* have been intoxicated, at least as we have defined the term, which supplies enough ambiguity to trigger the defendant's duty to defend. See *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 409 (if allegation falls " 'even possibly' " within coverage, insurer must defend).

not provide coverage for bodily injuries arising out of or in connection with the manufacturing, selling, distributing, serving, or furnishing of any alcoholic beverages." *Bagley* v. *Monticello Ins. Co.*, Massachusetts Superior Court, Docket No. 95296D (October 16, 1998); see also *Holmes* v. *Edison*, Docket No. CIV 00-1707 LCS/KBM-ACE (D.N.M. 2001) (policy provided that "[t]his insurance does not apply to . . . [b]odily injury . . . for which any insured . . . may be held liable as a result of the consumption of any alcoholic beverages"); but see *Monticello Ins.* v. *Mike's Speedway Lounge, Inc.*, 949 F. Sup. 694, 702 (S.D. Ind. 1996) (policy with "absolute liquor" exclusion provided "only illusory coverage" under Indiana law).

The defendant argues that the plaintiffs' allegations fall within our definition of intoxication in *Sanders*. In that regard, the defendant points out that *Sanders* defines intoxication in a number of ways, for instance, "an abnormal mental or physical condition due to the influence of intoxicating liquors," or "a derangement or impairment of physical functions and energies." *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 196 Conn. 349. Accordingly, the defendant contends, the allegations in the underlying complaints, which alleged that Rodriguez' consumption of alcohol caused " 'her to be unable to control her vehicle,' " or " 'caused her driving ability to become impaired,' " are essentially synonymous with, say, an " 'impairment of physical functions and energies,' " and, therefore, fall squarely within the *Sanders* formulation. We disagree.

Although the definition of intoxication set forth in *Sanders* goes on to provide examples that would be sufficient to support a finding of intoxication, for instance, "a derangement or impairment of physical functions and energies"; id.; these differing examples cannot not relieve the defendant of its duty to defend. First, keeping in mind the context in which this court

decided *Sanders*, these examples do not inform what constitutes intoxication as a matter of law; rather, they merely provide illustrations of what will be sufficient to support the factual finding that a purchaser of alcohol was intoxicated for purposes of the Dram Shop Act. In that regard, merely because a trier of fact ultimately may conclude that the plaintiffs' injuries in the present case were the result of Rodriguez' "intoxication," it does not follow that the allegations in the complaint, for instance, that "Rodriguez' consumption of alcohol at The Stadium caused her to be unable to control her vehicle," compel the conclusion that Rodriguez must have been intoxicated as a matter of law. Because an insurer's duty to defend is triggered without regard to the likelihood that it ultimately may be required to indemnify the insured, the examples in *Sanders*, setting forth what may be sufficient to establish intoxication at trial, cannot relieve the defendant of its duty to defend.[12]

---

[12] Much the same can be said of the defendant's reliance on *State* v. *Katz*, 122 Conn. 439, 442, 189 A.2d 606 (1937), at oral argument before this court. *Katz*, like *Sanders*, did not define what constitutes intoxication as a matter of law; rather, it merely provided an example of what would be sufficient to support the factual finding that a person was intoxicated. The defendant in *Katz*, who was charged with selling liquor to an intoxicated person, challenged the statute on vagueness grounds, claiming that the term " 'intoxicated person' " was too indefinite to be enforceable. Id., 440, 442. Without defining the term "intoxicated person," this court affirmed the conviction because evidence that the purchaser was staggering was sufficient to support a finding of intoxication. Id., 441–43.

In the present case, the defendant places great emphasis on the court's statement in *Katz* that the "condition of intoxication . . . [is] a matter of general knowledge . . . ." Id., 442. To that end, the defendant argues that common sense shows that Rodriguez was intoxicated in this case. The defendant's reliance on *Katz*, however, is misplaced because, although this court opined that common sense may be used to ascertain the term "intoxicated person," that was in the context of reviewing a factual finding made by the trier of fact, not in the context of reviewing, on a de novo basis, whether allegations in a complaint may possibly trigger an insurer's duty to defend. The defendant's argument is better suited for review of a factual finding made in the context of an insurer's duty to indemnify, not to defend, its insured.

Second, the additional definitions of intoxication in *Sanders* reinforce the notion that intoxication is defined in a number of ways. As previously discussed, intoxication has been defined, in one way or another, in both our statutes and case law. See, e.g., General Statutes § 53a-7; *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 196 Conn. 349. In addition, "intoxication" had been defined as "the condition of being drunk," with "drunk" meaning "having the faculties impaired by alcohol . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Intoxication also has been defined as a "diminished ability to act with full mental and physical capabilities because of alcohol or drug consumption; drunkenness." Black's Law Dictionary (7th Ed. 1997).

All of these varying definitions, however helpful to the defendant, merely show that intoxication is defined in a number of ways in a number of contexts. Given an insurer's broad duty to defend, and keeping in mind that any ambiguity in the terms ought to be resolved in favor of the insured; *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 352; these competing definitions reinforce our conclusion that subsection (1) of the liquor liability exclusion did not relieve the defendant of its duty to defend the insureds in the present case.

The defendant claims, nevertheless, that the liquor liability exclusion bars all claims that are dependent upon the sale or service of alcohol. Relying on cases from other jurisdictions that have interpreted similar exclusions; see, e.g., *Frost* v. *David*, 673 So. 2d 340, 344 (La. App. 1996); *Kelly* v. *Painter*, 202 W. Va. 344, 348, 504 S.E.2d 171 (1998); the defendant argues that all of the plaintiffs' allegations are dependent upon the sale or service of alcohol, and, therefore, are not covered under the policy. We disagree.

Interpreting this exclusion to bar all claims dependent upon the sale or service of alcohol expands its

reach beyond that which its explicit terms provide, and would render superfluous the specific language of subsections (2) and (3) of the liquor liability exclusion. In addition, the cases from other jurisdictions on which the defendant relies did not undertake the task of interpreting the meaning of the term "intoxication." We therefore decline to adopt such a broad reading of the liquor liability exclusion in the present case.

Finally, the defendant argues, as an alternate ground for affirmance, that subsection (2) of the exclusion, which relates to "[t]he furnishing of alcoholic beverages to a person under the legal drinking age," barred coverage in the present case. Because the parties have not adequately briefed this issue in this court, we decline to consider this claim. We therefore express no opinion as to the merits of that question, but instead leave it for further exploration in the trial court should the defendant choose to raise it.

The judgments are reversed and the case is remanded with direction to deny the defendant's motions for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.