D'AURIA, J.
**251 In this case, we must decide whether a Connecticut court may properly exercise personal jurisdiction over an out-of-state insurer whose only significant contacts with this state are the inclusion of Connecticut within the coverage territory of an automobile insurance policy and the occurrence of an automobile collision in Connecticut involving its insured. The defendant, Kingstone Insurance Company, a company domiciled in New York, contractually agreed to defend and indemnify its insured nationwide. After a vehicle driven by the insured collided in Connecticut with a vehicle driven by the plaintiffs, Jerzy and Sylvia **252 Samelko, however, the defendant failed to defend its insured and failed to provide indemnity after a judgment was rendered against the insured for damages resulting from the collision. The plaintiffs were subrogated to the rights of the insured under the policy issued by the defendant pursuant to General Statutes § 38a-321[1] and brought this action directly against the defendant to recover damages. *746 The trial court dismissed the action on the ground that it lacked personal jurisdiction over the defendant. We conclude, however, that exercising personal jurisdiction over the defendant insurer is permitted by our corporate long arm statute, General Statutes § 33-929(f)(1), and comports with the due process clause of the fourteenth amendment to the United Statutes Constitution. See U.S. Const., amend. XIV, § 1. Accordingly, we disagree with the trial court's contrary conclusion and, therefore, reverse and remand the case with direction to deny the defendant's motion to dismiss and for further proceedings.
The following facts, which were alleged in the complaint or which the trial court found were not genuinely in dispute, are relevant to this appeal. The defendant issued a business automobile insurance policy covering a vehicle driven by Geraldo A. Cardozo (insured). The policy was written in New York at the defendant's principal place of business, and the vehicle was garaged in New York at that time. The defendant does not maintain any offices in Connecticut, was not licensed, at the time **253 it issued the policy, to provide insurance in Connecticut, and did not direct or participate in any business transactions in Connecticut.
In consideration for paid premiums and adherence to the terms of the policy, the defendant agreed to provide its insured $100,000 of liability insurance for any one accident or loss. To be covered by the policy, however, the accident or loss must occur within the designated coverage territory of "[t]he United States of America ...." The policy obligates the defendant to indemnify its insured by "pay[ing] all sums an insured legally must pay as damages because of bodily injury or property damage ... caused by an accident ...." (Internal quotation marks omitted.) It also requires the defendant to defend its insured, stating that "[the defendant has] the right and duty to defend any insured against [an action] asking for such damages ...." (Internal quotation marks omitted.)
While this policy with nationwide coverage was in effect, the insured's vehicle collided with a vehicle occupied by the plaintiffs in Stamford, Connecticut. The plaintiffs each sustained bodily injury as a result of the collision, and the defendant's insured was found legally responsible after a default judgment was rendered against him. Samelko v. Cardozo , Superior Court, judicial district of Fairfield, Docket No. CV-09-5024762-S (March 14, 2013). The judgment was rendered against the insured for $126,839.93 in favor of Jerzy Samelko and for $10,852 in favor of Sylvia Samelko. Id.
The defendant received notice of the accident and the action brought against its insured, but the defendant failed to defend the insured and failed to indemnify him for the judgment rendered against him. The plaintiffs then brought this action against the defendant,[2] claiming **254 breach *747 of contract, breach of the covenant of good faith and fair dealing, negligence, conversion, unfair claims settlement practices in violation of General Statutes § 38a-816 (6), unfair trade practices in violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and unjust enrichment.
Although the plaintiffs are not parties to the insurance contract between the insured and the defendant, they brought this action under Connecticut's insurance subrogation statute, § 38a-321, which allows a party who has an unsatisfied judgment against an insured for bodily injury to step into the shoes of the insured and bring a claim under the insured's policy directly against the insurer. See footnote 1 of this opinion; see also Home Ins. Co. v. Aetna Life & Casualty Co. , 235 Conn. 185, 198, 663 A.2d 1001 (1995) (noting that § 38a-321 authorizes judgment creditor "to assert any claim or defense that [the insured judgment debtor] could have raised [in an action against the insurer]").
The defendant moved to dismiss this action for lack of personal jurisdiction. The principal basis of the defendant's motion was that the defendant did not do business in Connecticut, and, thus, it would not be subject to the long arm statute and requiring it to defend this action in Connecticut would not comport with due process. Both parties undertook jurisdictional discovery, and the plaintiffs filed a brief in opposition to the motion to dismiss. The plaintiffs responded in relevant part that there was personal jurisdiction over the defendant because their claims "[arose] out of a contract to **255 be performed in this state" pursuant to § 33-929 (f) (1) and (4).[3]
The trial court granted the defendant's motion to dismiss, reasoning that "there is no evidence" and "no authority is provided" to support the plaintiffs' claims. Specifically, the court found that the plaintiffs had failed to meet their burden of providing evidence that the cause of action arose out of a contract to be performed in Connecticut. Instead, the trial court was persuaded by the fact that the insured resided in New York, "the vehicle ... was registered and garaged in New York," the insured "maintained his driver's license in New York," and "[t]he policy was sold, paid for and written in New York ...." In short, the court found that "there is no evidence the defendant ever had notice, or even an inkling, that its insured was living in Connecticut" for purposes of the due process analysis. The plaintiffs moved for reargument and reconsideration, which the trial court denied. The plaintiffs appealed to the Appellate Court, and this court transferred the appeal to itself. See General Statutes § 51-199 (c) ; Practice Book § 65-1.
The outcome of this appeal turns on whether the trial court had personal *748 jurisdiction over the defendant, an out-of-state (foreign) corporation. "[A] court cannot render a judgment without first obtaining personal jurisdiction over the parties." Argent Mortgage Co., LLC v. Huertas , 288 Conn. 568, 576, 953 A.2d 868 (2008). "When **256 a ... court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.... Where, however, as here, the motion is accompanied by supporting affidavits [and other evidence] containing undisputed facts, the court may look to their content for determination of the jurisdictional issue." (Citation omitted; internal quotation marks omitted.) Cogswell v. American Transit Ins. Co. , 282 Conn. 505, 516, 923 A.2d 638 (2007) ; see Cuozzo v. Orange , 315 Conn. 606, 615, 109 A.3d 903 (2015) (court may consider supplementary, undisputed facts in determining jurisdictional issue).
Ordinarily, the defendant has the burden to disprove personal jurisdiction. Cogswell v. American Transit Ins. Co. , supra, 282 Conn. at 515, 923 A.2d 638. However, "[i]f the defendant challenging the court's personal jurisdiction is a foreign corporation ... it is the plaintiff's burden to prove the court's jurisdiction." Id. To do so, the plaintiffs must "produce evidence adequate to establish such jurisdiction." Id., at 516, 923 A.2d 638.
"When a defendant challenges personal jurisdiction in a motion to dismiss, the court must undertake a two part inquiry to determine the propriety of its exercising such jurisdiction over the defendant. The trial court must first decide whether the applicable state [long arm] statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Kenny v. Banks , 289 Conn. 529, 533, 958 A.2d 750 (2008). In the present case, therefore, **257 we must first review whether § 33-929 (f) applies to the defendant and then review whether constitutional due process is satisfied. See id. Because a jurisdictional challenge presents a question of law, our review is plenary. See, e.g., New London County Mutual Ins. Co. v. Nantes , 303 Conn. 737, 745, 36 A.3d 224 (2012).
Applying this analysis in the present case, we agree with the plaintiffs that the defendant's particular agreement to defend and indemnify its insured establishes personal jurisdiction under Connecticut's corporate long arm statute, § 33-929 (f) (1),[4] and that subjecting the defendant to the jurisdiction of this state comports with the due process clause of the fourteenth amendment to the United States constitution.
I
We begin by examining the defendant's claim under our corporate long arm statute. Because the defendant is a foreign corporation that, at the time of the creation of the contract, had no formal presence *749 in Connecticut, a Connecticut court may obtain personal jurisdiction over the defendant only if our long arm statute permits it. See Kenny v. Banks , supra, 289 Conn. at 533, 958 A.2d 750.
Section 33-929 (f) (1) provides in relevant part that "[e]very foreign corporation shall be subject to suit in this state, by a resident of this state[5] ... on any cause of action arising ... [o]ut of any contract made in this state or to be performed in this state ...." (Footnote added.) The only portion of this statute that the parties **258 have a dispute over is whether the insurance contract was "to be performed" in Connecticut; more specifically, they disagree about the statutory meaning of "to be performed." General Statutes § 33-929 (f) (1). The plaintiffs assert that this statute confers jurisdiction as long as the contract calls for a performance in Connecticut. The defendant contends that, even though it agreed to defend and indemnify its insured throughout the United States, "there is nothing on the face of the insurance policy from which it can be concluded that the policy is a contract to be performed in Connecticut," essentially claiming that personal jurisdiction is conferred in the present case only if the defendant has actually performed under the contract in this state.
We conclude that the phrase "to be performed" as used in § 33-929 (f) (1) refers to the performance that the parties contemplated in the contract, without regard to whether it has actually been performed.[6] In interpreting the meaning of the statute at issue, we give its text its ordinary meaning. General Statutes §§ 1-1 (a) and 1-2z. The legislature's inclusion of "to be" before "performed" naturally suggests that the legislature intended for the statute to apply to contractual performance that the parties intended, whether it has occurred or not. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2011) p. 105 ("be ... used with the infinitive with to to express futurity, arrangement in advance, or obligation ... [for example] I am to interview him today" [emphasis altered] ). As such, in the present case, **259 whether the defendant had already performed in this forum is irrelevant. Similarly, even though the contract is contingent on a collision-which may never actually occur-that contingency does not negate the contemplation of the defendant's performance in this forum. Indeed, by the very nature of breach of contract actions, many of those actions involve performance that is required under the contract but that never in fact occurred. We doubt the legislature intended to exclude these types of breach of contract actions from the scope of § 33-929 (f) (1) by limiting its scope to only cases in which contract performance was actually rendered.
In addition, because the plain language of the statute does not specify which party's performance must be considered, it makes no difference whether the insured, the defendant, or another party to the *750 contract was required to perform in this state. Indeed, our case law and the decisions of the United States District Court for the District of Connecticut reflect that either the insured's or the defendant insurer's conduct can satisfy § 33-929 (f) (1). Bowman v. Grolsche Bierbrouwerij B.V. , 474 F.Supp. 725, 731-32 (D. Conn. 1979) (Connecticut's long arm statute "does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought"); Ferrara v. Munro , Superior Court, judicial district of Middlesex, Docket No. CV-14-6011790 (November 20, 2014) (59 Conn. L. Rptr. 337, 338-39) ("There is no indication ... that the Connecticut legislature intended that the language 'to be performed in this state' should be given a limited construction to require performance in this state by the party over whom jurisdiction is sought.... The court therefore finds that performance may be measured solely by the plaintiff's performance."); Elstein & Elstein, P.C. v. TrafficCast, Inc. , Superior Court, judicial district of Fairfield, Docket No. CV-05-4011761-S (May 24, 2006) (41 Conn. L. Rptr. 388, 389-90) (relying **260 on Bowman v. Grolsche Bierbrouwerij B.V. , supra, at 731-32, and exercising personal jurisdiction because plaintiffs' contract with defendant was to be performed by plaintiffs in Connecticut); Hudson United Bank v. Citibank Delaware , Superior Court, judicial district of New Haven, Docket No. CV-02-0467996-S (October 5, 2004) (38 Conn. L. Rptr. 59, 60) (defendant was subject to personal jurisdiction under § 33-929 [f] [1] because action arose out of contract that defendant entered into with third party that was to perform Connecticut); Travelers Insurance v. Par Industries, Inc. , Superior Court, judicial district of New Haven, Docket No. CV-96-394427-S, (21 Conn. L. Rptr. 393, 394) ("[a] contract does not have to be performed in Connecticut by a defendant foreign corporation for the court to exercise personal jurisdiction ... [as] [p]erformance by one party is sufficient").[7]
With these principles in mind, we conclude that the contract in the present case contemplated performance by the defendant in Connecticut sufficient to bring it within our long arm statute. Whether the contract contemplates performance in Connecticut turns on "the totality of contacts which the defendant" obligates itself to have, or contemplates that it will have, in this forum on the basis of the agreed upon performance in the contract. Lombard Bros., Inc. v. General Asset Management Co. , 190 Conn. 245, 254-55, 460 A.2d 481 (1983). This requires a fact specific, case-by-case examination **261 of the obligations that the contract contemplates. Thomason v. Chemical Bank , 234 Conn. 281, 291, 661 A.2d 595 (1995). The outer boundaries of what qualifies as a contemplated performance are broad. In fact, we have said that the contemplation of "incidental acts of performance of contracts in this state would come within our statute" when the defendant also has other significant contacts with this forum. (Emphasis added.) *751 Lombard Bros., Inc. v. General Asset Management Co. , supra, at 256-57, 460 A.2d 481.
The insurance policy, written by the defendant, obligated the defendant to "defend [its] insured against [an action] ... [or] settle any claim" resulting from an accident covered by the terms of the policy. In addition, the defendant must "pay all sums" arising from a settlement or verdict that the " 'insured' legally must pay" as a result of an injury to which the policy applies. These promises apply to any location within the coverage territory, which spans the United States. By requiring the defendant to provide a defense and indemnify the insured nationwide, the contract expressly contemplated the defendant's performance in Connecticut if its insured was involved in an accident here. The duty to provide a defense requires the engagement of counsel to undertake such tasks as interviewing and deposing Connecticut witnesses, meeting with opposing Connecticut counsel, and appearing in a Connecticut court-room. Indemnifying the insured could include reimbursing a Connecticut citizen injured in this state for damages suffered in this state. In other words, when the contract expressly contemplates providing a defense and indemnification in Connecticut, it anticipates a host of unavoidable performances in Connecticut.
These contemplated performances are much more than "incidental" to the contract, as defending and indemnifying the insured are the primary purposes of an insurance contract.
**262 Lombard Bros., Inc. v. GeneralAsset Management Co. , supra, 190 Conn. at 256-57, 460 A.2d 481. Traditionally, the central value an automobile insurance policy provides to its insured is that the insurer will provide a defense and indemnity in the event of a qualifying loss or injury within the coverage territory.[8] See generally Rossman v. State Farm Mutual Automobile Ins. Co. , 832 F.2d 282, 286-87 (4th Cir. 1987) (nationwide automobile insurance coverage "is basic to the product that [the defendant insurance company] markets" and "[i]nsurance by its nature involves the assertion of claims, and resort to litigation is often necessary" [internal quotation marks omitted] ). Even though the defendant's duty to defend and indemnify was intended for the insured's benefit, it is worth noting again that the plaintiffs ultimately suffered the actual harm and are thus subrogated to all the rights of the insured. General Statutes § 38a-321. Given that the defendant's contemplated obligations are such an intrinsic premise of its insurance contract, we conclude that these contractual promises were "to be performed" in Connecticut within the meaning of § 33-929 (f) (1).
Our analysis is consistent with the conclusions of other jurisdictions with similar statutory language. For example, in South Carolina, " 'to be performed,' " as used in that state's long arm statute, means all parties knew that at least part of the performance was to take place in the state. Colite Industries, Inc. v. G.W. Murphy Construction Co. , 297 S.C. 426, 428, 377 S.E.2d 321 (1989). Here, similarly, because the contract expressly included Connecticut in its coverage territory, the parties knew that, if the insured had an accident in Connecticut, the most fundamental part of the defendant's performance-defense and indemnification-was to take place in Connecticut. In Mississippi, " 'to be performed' "
**263 in that state's long arm statute means that the defendant had at least some duties that had to be performed *752 in the forum. J. R. Stripling v. Jordan Production Co., LLC , 234 F.3d 863, 869 (5th Cir. 2000). In the present case, not only were some of the defendant's duties contemplated as being performed in this forum, but, after the accident, the defendant's primary obligations under the contract to defend and indemnify were required to be performed here. In North Carolina, " 'to be performed,' " as used in its long arm statute, is construed broadly and liberally in favor of establishing the existence of personal jurisdiction. Williamson Produce v. Satcher , 122 N.C. App. 589, 592-93, 471 S.E.2d 96 (1996).
The defendant asserts that it is "simply untrue" that the contract was "to be performed" in Connecticut. Tellingly, the defendant cites primarily to only one case to support his assertion, Brown v. Atlantic Casualty Ins. Co. , Superior Court, judicial district of New Haven, Docket No. CV-98-0415999-S (November 13, 1998) (23 Conn. L. Rptr. 367, 367), which involved uninsured motorist coverage. The defendant then goes on to cite other cases involving uninsured and underinsured motorist disputes, using them by analogy to support its contention that our long arm statute does not apply. See, e.g., Bogen v. Bonanno , Superior Court, judicial district of New Haven, Docket No. CV-06-5001344-S (April 13, 2006) (41 Conn. L. Rptr. 219, 219). Those cases, however, are inapposite as to whether, in the present case, the defendant's contractual obligations to defend and indemnify the insured were "to be performed" in Connecticut.
Uninsured and underinsured motorist coverage is fundamentally different from liability coverage because of the location of the performance due under the contract. We agree with the defendant that, most likely, an insurer's promise under an uninsured motorist policy **264 is not "to be performed" under § 33-929 (f) (1) in the state where an accident occurs because that type of policy promises only to make the insured whole. Therefore, it does not necessarily require the insurer to perform in the foreign jurisdiction; performance can take place where the insured resides or where the insurer is domiciled. Put another way, the nature of an uninsured motorist claim eliminates much, if not all, of the contemplated activities the insurer otherwise would have to perform in the forum where the collision occurred. By contrast, a liability claim requires the insurer to provide a defense for its insured, in addition to its indemnification obligation, unavoidably compelling performance in the jurisdiction in which the collision occurs.
The trial court in the present case improperly determined it lacked personal jurisdiction over the defendant under § 33-929 (f) (1) because it largely focused its inquiry on facts relevant to the formation of the contract and not where the contract was to be performed. In analyzing the defendant's performance, the court considered that the insured "reside[d] within the state of New York," the policy "was secured through a New York broker ... the vehicle ... was registered and garaged in New York," the insured "maintained his driver's license in New York ... [t]he policy was sold, paid for and written in New York," and the insured "was using a New York address ...." These facts do not help demonstrate whether the defendant's obligations-nationwide defense and indemnification-were "to be performed" in Connecticut for purposes of § 33-929 (f) (1). Instead, these facts connect more closely to the formation of the contract. For example, the location of the insured's residence and the state in which the insured maintained his driver's license have no bearing on where an accident or an injury requiring defense and indemnification was contractually contemplated to take place. Therefore, the trial court improperly *753 determined **265 that the defendant was not subject to personal jurisdiction under the corporate long arm statute.
II
We next consider whether exercising personal jurisdiction over the defendant is proper under the due process clause of the fourteenth amendment to the federal constitution, which limits the jurisdiction of state courts to render judgments against a nonresident defendant. Kulko v. Superior Court , 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L. Ed. 2d 132 (1978) ; see U.S. Const., amend. XIV, § 1. "[T]he constitutional due process standard requires that, in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the [action] does not offend traditional notions of fair play and substantial justice.... [This requirement] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." (Internal quotation marks omitted.) Cogswell v. American Transit Ins. Co. , supra, 282 Conn. at 523, 923 A.2d 638.
The constitutional test, therefore, has two distinct but "related components: the minimum contacts inquiry and the reasonableness inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Id., at 524, 923 A.2d 638. The test for minimum contacts "is not susceptible of mechanical application" but, instead, depends on weighing "the facts of the particular case." (Internal quotation marks omitted.) Id., at 525, 923 A.2d 638.
The United States Supreme Court has established that the minimum contacts analysis is based, in large part, on foreseeability. Id., at 529, 958 A.2d 750. Foreseeability means that "the defendant's conduct and connection with the **266 forum [s]tate are such that he should reasonably anticipate being haled into court there." (Internal quotation marks omitted.) Id. Foreseeability, however, "is not the mere likelihood that a product will find its way into the forum [s]tate." (Internal quotation marks omitted.) Id. Additionally, "unilateral activity" by the plaintiffs in reaching out to a "nonresident defendant cannot satisfy the requirement of [minimum] contact with the forum [s]tate." (Internal quotation marks omitted.) Id., at 530, 958 A.2d 750. In other words, the defendant must commit some act in which he "purposefully avails [himself] of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." (Internal quotation marks omitted.) Id. The requirement of "purposeful availment," therefore, "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts ...." (Internal quotation marks omitted.) Id. In short, the United States Supreme Court has recognized that, "for personal jurisdiction to lie, the defendant must create the significant connection with the forum state ...." (Citation omitted; emphasis in original.) Id.
In the present case, the foreseeability prong of the minimum contacts analysis is satisfied. Given that the defendant drafted an insurance policy expressly covering nationwide travel, it should have foreseen the need to defend and indemnify its insured as a result of collisions during nationwide travel. The fact that the defendant anticipated such travel essentially encourages it, predictably resulting in the potential for claims arising out of injuries *754 occurring coast-to-coast and legal disputes over coverage. Because the defendant obligated itself to provide a legal defense in Connecticut, it should have reasonably anticipated being haled into a Connecticut court when a dispute arose over the performance or nonperformance of its obligations. The defendant's promise to provide a defense-entailing **267 acts such as interviewing witnesses, taking depositions, meeting with opposing counsel, and litigating in court-purposefully availed it of the privilege of conducting activities within this forum. The insurance policy was a substantial, self-drafted connection to Connecticut. That connection was not random, fortuitous, or attenuated, but, rather, it was a significant, profit driven effort to provide services in this forum in exchange for compensation.
Our analysis comports with the consensus of other jurisdictions that have similarly examined exerting personal jurisdiction over nationwide insurers that do not otherwise do any business in the forum. In Rossman v. State Farm Mutual Automobile Ins. Co. , supra, 832 F.2d at 285, for example, the United States Court of Appeals for the Fourth Circuit considered whether there was personal jurisdiction over an insurer that contracted to defend and indemnify its insured nationwide when the collision at issue occurred in a state where the insurer otherwise did no business. The Fourth Circuit concluded that, in such circumstances, the District Court's exercise of personal jurisdiction over the insurer comported with the due process clause. Id., at 286. The court reasoned that when an insurer "specifically promise[s] to defend its policyholders from any claim or [action] arising from a loss or accident within ... [the] United States," its "expectation of being haled into court in a foreign state is an express feature of its policy." Id.
The Fourth Circuit also explained that, because "an automobile liability policy is typically sued upon where an accident takes place," insurers should anticipate that insureds will travel to other states within the coverage territory "and become involved in accidents and litigation there." (Internal quotation marks omitted.) Id., at 286. This is because "[i]nsurance by its nature involves the assertion of claims, and resort to litigation is often necessary."
**268 (Internal quotation marks omitted.) Id. After all, nationwide coverage "is basic to the product that [the defendant insurer] markets." Id., at 287.
The United States Court of Appeals for the Ninth Circuit has ruled similarly. That court reasoned that "an insurer has the contractual ability to control the territory into which its product-the indemnification and defense of claims-will travel," and, therefore, "litigation requiring the presence of the insurer is ... foreseeable ...." (Internal quotation marks omitted.) Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co. , 907 F.2d 911, 914 (9th Cir. 1990). Other jurisdictions agree with these decisions, including the United States Courts of Appeals for the Sixth, Eighth, Tenth, and Eleventh Circuits. See, e.g., TH Agriculture & Nutrition, LLC v. Ace European Group, Ltd. , 488 F.3d 1282, 1290-91 (10th Cir. 2007) ; McGow v. McCurry , 412 F.3d 1207, 1214-15 (11th Cir. 2005) ;[9] Ferrell v. West Bend Mutual Ins. Co. , 393 F.3d 786, 790-91 (8th Cir. 2005) ; Payne v. Motorists' Mutual Ins. Cos. , 4 F.3d 452, 455-56 (6th Cir. 1993).
*755 "Once minimum contacts have been established, [t]he second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice-that is, whether it is reasonable under the circumstances of the particular case." (Internal quotation marks omitted.) Cogswell v. American Transit Ins. Co. , supra, 282 Conn. at 525, 923 A.2d 638. Therefore, even if minimum contacts are satisfied, the due process requirement "may be defeated where the defendant presents a compelling case that ... other considerations would render jurisdiction **269 unreasonable." (Internal quotation marks omitted.) Id. This second inquiry seeks to prevent litigation that is "gravely and unfairly inconvenient" to the defendant "in light of all of the circumstances ...." United States Trust Co. v. Bohart , 197 Conn. 34, 43, 495 A.2d 1034 (1985). This examination includes five factors aimed at determining whether the "quality and nature of the defendant's activity" make it "reasonable and fair to require him to conduct his defense in that [s]tate." (Internal quotation marks omitted.) Kulko v. Superior Court , supra, 436 U.S. at 92, 98 S.Ct. 1690.
In the present case, the factors indicate that it was fair and reasonable to require the defendant to defend itself in Connecticut. The first factor is " 'the burden on the defendant' ...." Burger King Corp. v. Rudzewicz , 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L. Ed. 2d 528 (1985). In the present case, the burden on the defendant to litigate in Stamford, Connecticut, as opposed to in neighboring New York, could not be more minimal because, as the plaintiffs point out, the litigation would occur "tens of miles away from its ... home ...." (Footnote omitted.) The second factor, " 'the forum [s]tate's interest in adjudicating the dispute' "; Burger King v. Rudzewicz , supra, at 477, 105 S.Ct. 2174 ; weighs heavily in favor of the plaintiffs because Connecticut has a strong interest in resolving a dispute involving Connecticut residents in a collision that occurred in Connecticut and arising from an unsatisfied Connecticut judgment.
It is possible to view the third factor, which is " 'the plaintiff's interest in obtaining convenient and effective relief' "; id. ; as perhaps weighing against exercising jurisdiction in Connecticut because, in this particular case, it is only slightly more inconvenient to require the plaintiffs to bring their action just over the state border in New York. The burden, therefore, is minimal, and the plaintiffs' opportunity to vindicate their rights **270 is not diminished. However, given that the collision took place in Connecticut and involved Connecticut residents, and because witnesses and evidence are likely to be located in Connecticut, the fourth factor, " 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' " in our view, weighs heavily in favor of Connecticut courts exercising jurisdiction. Id. Thus, conducting the litigation in New York is not likely to be more convenient and could very well be less convenient. The final factor, "the 'shared interest of the several [s]tates in furthering fundamental substantive social policies,' " weighs most heavily in favor of personal jurisdiction in Connecticut. Id. We agree with the plaintiffs that Connecticut has the greatest interest in ensuring the safety of its roads and encouraging the satisfaction of its judgments.
In short, requiring the defendant to defend itself in Connecticut comports with traditional notions of fair play and substantial justice. We therefore join other jurisdictions, cited previously, in concluding that an insurer that promises to defend and indemnify its insured in this forum *756 cannot then claim there is no jurisdiction over it in that same forum.
The defendant points to Cogswell v. American Transit Ins. Co. , supra, 282 Conn. 505, 923 A.2d 638, to argue that the minimum contacts requirement is not satisfied in the present case. Cogswell is inapposite because the cause of action in that case did not involve an insured's collision in this forum that gave rise to a coverage dispute. Instead, it involved the Insurance Commissioner's action to enforce a subpoena against an insurer that was not licensed in Connecticut. Id., at 507-509, 923 A.2d 638. Thus, the only contacts with this forum that the defendant in Cogswell had were the mailing of at least one letter and the making of at least one telephone call to Connecticut. Id., at 528, 923 A.2d 638. Cogswell has no bearing on the present issue of whether the defendant's contract to defend and **271 indemnify its insured in Connecticut satisfies the minimum contacts analysis.[10]
The defendant also contends that out-of-state cases bolster its argument that the minimum contacts requirement is not satisfied under the facts of the present case. For example, the defendant cites to an Arizona Supreme Court case, Batton v. Tennessee Farmers Mutual Ins. Co. , 153 Ariz. 268, 272, 736 P.2d 2 (1987), which finds the reasoning of Rossman and similar cases "not persuasive." That court concluded that an insurer's "agreement to defend and indemnify [its insured] in any state does not imply an agreement to allow its own insured to bring [an action] in any state." Id., at 273, 736 P.2d 2. The nationwide weight of authority concludes to the contrary, however, and, most importantly, we agree with the analysis of those authorities. See, e.g., TH Agriculture & Nutrition, LLC v. Ace European Group Ltd. , supra, 488 F.3d at 1290 ; McGow v. McCurry , supra, 412 F.3d at 1214-15 ; Ferrell v. West Bend Mutual Ins. Co. , supra, 393 F.3d at 790-91 ; Payne v. Motorists' Mutual Ins. Cos. , supra, 4 F.3d at 455-57 ; Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co. , supra, 907 F.2d at 913-14 ; Rossman v. State Farm Mutual Automobile Ins. Co. , supra, 832 F.2d at 286-87.
Lastly, the defendant reasserts the ways in which it lacks contacts with Connecticut, emphasizing that it is not "domiciled" in Connecticut, was "not licensed in Connecticut" at the time it was served, the contract **272 was not "issued" in Connecticut, and the vehicle was not "garaged" in Connecticut. But this emphasis on the lack of certain Connecticut contacts misses the point of a minimum contacts analysis. The defendant might very well have more contacts with New York. But its agreement to defend and indemnify its insured for collisions in Connecticut satisfies the minimum contacts requirement and does not offend traditional notions of fair play under a due process analysis. The defendant cannot dissolve its contractually created minimum contacts with this forum by listing the ways in which it does not otherwise have a presence in Connecticut.
The judgment is reversed and the case is remanded with direction to deny the *757 defendant's motion to dismiss and for further proceedings according to law.
In this opinion the other justices concurred.

General Statutes § 38a-321 provides in relevant part: "Upon the recovery of a final judgment against any person ... for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment was not satisfied ... such judgment creditor shall be subrogated to all rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

After the plaintiffs brought the present action, the insured also brought a separate action in Connecticut against the defendant for failure to defend and indemnify him in the original action brought by the plaintiffs. The trial court granted the defendant's motion to dismiss in the case brought by the insured, reasoning that the court lacked personal jurisdiction over the defendant because it did not meet the due process requirements under the federal constitution. Cardozo v. Kingstone Ins. Co. , Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-16-6028077-S (June 13, 2017) (64 Conn. L. Rptr. 662, 667).

The plaintiffs also argued that the defendant's application for and the issuance of a license to provide insurance in Connecticut, which occurred after the events in question, subjected the defendant to the jurisdiction of the court under General Statutes § 38a-25 (b). The plaintiffs do not advance that argument before this court, and, thus, we deem it abandoned. Harris v. Bradley Memorial Hospital & Health Center, Inc. , 306 Conn. 304, 319, 50 A.3d 841 (2012) ("[a]n appellant who fails to brief a claim abandons it" [emphasis omitted; internal quotation marks omitted] ), cert. denied, 569 U.S. 918, 133 S.Ct. 1809, 185 L.Ed. 2d 812 (2013) ; Czarnecki v. Plastics Liquidating Co. , 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979) ("claims of error not briefed are considered abandoned").

Given that we find the statutory requirements for long arm jurisdiction are satisfied under § 33-929 (f) (1), we do not address the plaintiffs' argument that their cause of action arises from " 'tortious conduct in this state ... arising out of ... nonfeasance' " related to the defendant's failure to defend and indemnify its insured, which they claim confers long arm jurisdiction pursuant to § 33-929 (f) (4).

The defendant has not raised the issue of whether the Connecticut residency requirement of § 33-929 (f) (1) refers to the residency of the insured or the subrogee plaintiffs.

Our conclusion construing "to be performed" in § 33-929 (f) (1) as contemplated performance is consistent with how the Superior Court and the United States District Court for the District of Connecticut have interpreted that phrase. See, e.g., Prout v. Mukul Luxury Boutique Hotel & Spa , Superior Court, judicial district of New Britain, Docket No. CV-15-6029341-S (February 28, 2017) ("the contract expressly contemplated or required performance in Connecticut" [emphasis added; internal quotation marks omitted] ); Aurand v. Contemporary Marketing, Inc. , United States District Court, Docket No. 3:05CV1053 (JCH) (D. Conn. December 20, 2005) (same).

We note that certain of these cases analyze General Statutes (Rev. to 1979) § 33-411 (c), which is the predecessor to § 33-929 (f) (1) and contains identical language. In 1994, the legislature enacted Public Acts 94-186, §§ 193 (e) and 214, amending Connecticut's statutory scheme to conform to the Model Business Corporation Act. Thomason v. Chemical Bank , 234 Conn. 281, 292, 661 A.2d 595 (1995). The legislature, however, "specifically incorporated the language of [General Statutes (Rev. to 1979) ] § 33-411 (c) into the new act" because it sought to "[reject] a narrower long arm provision." Id., at 292-93, 661 A.2d 595. Accordingly, we equate these prior analyses of General Statutes (Rev. to 1979) § 33-411 (c) with our current analysis of § 33-929 (f) (1).

Although the defendant has unrelated obligations pursuant to the contract, such as paying for the " 'pollution cost[s]' " associated with some accidents, such a duty is not the most substantial part of its obligations.

We note that, although McGow involved a claim regarding uninsured motorist coverage, the long arm statute at issue in that case conferred personal jurisdiction to the maximum extent permitted by the due process clause of the federal constitution. McGow v. McCurry , supra, 412 F.3d at 1213-14.

The defendant's reliance on the trial court's decision to grant the motion to dismiss in Cardozo v. Kingstone Ins. Co. , Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-16-6028077-S (June 13, 2017) (64 Conn. L. Rptr. 662, 665-67), is similarly misplaced given that the court's ruling in that case was based on an analysis of Cogswell with which we disagree. The defendant also cites to cases that arose from uninsured motorist claims to support the argument that it lacks minimum contacts. As we discussed previously, we find uninsured motorist claims to be distinguishable from liability claims like the one in the present case, and, therefore, those cases do not apply.