******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

NASH STREET, LLC *v.* MAIN STREET AMERICA
ASSURANCE COMPANY ET AL.
(SC 20389)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff sought to recover proceeds allegedly due under a commercial
general liability insurance policy issued by the defendant insurer to its
insured, B Co. The plaintiff contracted with B Co. to renovate the plain-
tiff's damaged house, including site grading and foundation work, which
involved, inter alia, the lifting of the house off of the foundation. The
house collapsed after it was lifted by B Co.'s subcontractor. At the time
of the collapse, the only work being performed on the house was related
to the lifting. The plaintiff brought a separate action against B Co. for
property damage arising from the collapse. B Co. tendered defense of
the case to the defendant pursuant to the insurance policy, and the
defendant declined to defend. The plaintiff subsequently brought the
present action against the defendant, seeking recovery under a default
judgment that the plaintiff had secured against B Co. in the separate
action. The trial court granted the defendant's motion for summary
judgment and rendered judgment thereon, concluding that the defendant
had no duty to defend or to indemnify B Co. based on the applicability
of two provisions in the insurance policy excluding coverage for property
damage to "that particular part of real property" on which the insured
or anyone working on the insured's behalf is "performing operations if
the property damage arises out of those operations" and for property
damage to "that particular part of any property that must be restored,
repaired or replaced because" the insured's work "was incorrectly per-
formed on it." The plaintiff thereafter appealed, claiming that the trial
court improperly granted the defendant's motion for summary judgment
because, at the time B Co. tendered defense of the case to the defendant,
there existed at least a possibility that the complaint alleged a liability
covered under B Co.'s insurance policy that would have triggered the
defendant's duty to defend. More specifically, the plaintiff claimed that
the defendant had a duty to defend B Co. because the complaint alleged
damage only to the house and interior renovation work, whereas the
two relevant policy exclusions precluded coverage only for the defective
work to the foundation itself and not for damage to the rest of the
house. *Held* that the trial court improperly granted the defendant's
motion for summary judgment, that court having incorrectly determined
that the two exclusions relieved the defendant of its duty to defend B
Co. in the plaintiff's action against B Co., as there was a possibility that
the damages the plaintiff alleged in that action were not excluded under
the policy; numerous courts, including this court, have recognized that
legal uncertainty can give rise to an insurer's duty to defend, there was
legal uncertainty in the present case as to the meaning and applicability
of the two exclusions, Connecticut law favors a narrow construction
of exclusions and requires that ambiguous provisions be construed in
favor of the insured, many other courts have interpreted exclusions
with the "that particular part" language in a manner favoring coverage,
and neither this court nor the Appellate Court has previously interpreted
exclusions identical to those at issue in the present case.

Argued January 14—officially released September 9, 2020**

*Procedural History*

Action to recover proceeds allegedly due under a
commercial general liability insurance policy issued by
the named defendant, and for other relief, brought to
the Superior Court in the judicial district of Ansonia-
Milford, where the court, *Tyma, J.*, denied the plaintiff's
motion for summary judgment and granted the named

defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*David G. Jordan*, with whom, on the brief, was *Samantha M. Oliveira*, for the appellant (plaintiff).

*Scott T. Ober*, with whom was *Colleen M. Garlick*, for the appellee (named defendant).

*Opinion*

McDONALD, J. The dispositive issue before us is whether the defendant insurer had a duty to defend an action brought against its insured in an underlying action alleging property damage resulting from a house that collapsed while being lifted off its foundation. The insurance policy under review contained clauses excluding coverage for damage that occurs to "that particular part" of real property on which the insured was working. In this case, brought under the direct action statute; see General Statutes § 38a-321; the plaintiff, Nash Street, LLC, appeals from the judgment of the trial court, which granted the motion for summary judgment filed by the named defendant, Main Street America Assurance Company.[1] The plaintiff claims that the trial court improperly granted the defendant's motion for summary judgment because, at the time the insured, New Beginnings Residential Renovations, LLC, tendered defense of the underlying action to the defendant, there existed at least a possibility that the complaint alleged a liability that was covered under New Beginnings' insurance policy and, thus, triggered the defendant's duty to defend. We agree with the plaintiff and reverse the judgment of the trial court.

The parties stipulated to the following facts in the direct action. The plaintiff's property in Milford needed repairs after being damaged by Hurricanes Sandy and Irene. The plaintiff contracted with New Beginnings to renovate the house, including site grading and foundation work for which the house would be lifted and temporarily placed onto cribbing. A subcontractor was retained to lift the house and to do concrete work on the foundation.

While the subcontractor was lifting the house in preparation for the foundation work, the house "shifted off the supporting cribbing and collapsed." At the time of the collapse, the only work being performed on the house was related to the lifting. New Beginnings and/or its subcontractor caused the collapse by failing to ensure that the cribbing was secure. As a result, the house sustained "extensive physical damage . . . ."

The plaintiff brought an action against, inter alios, New Beginnings for property damage arising out of the collapse. The complaint alleged, in pertinent part, that "New Beginnings was negligent in the performance of its work in the following respects . . . New Beginnings and/or its subcontractors negligently constructed or assembled the cribbing [that] caused the collapse; and . . . New Beginnings and/or its subcontractors failed to ensure that the cribbing properly supported the house. . . . As a result of New Beginnings' negligence, the cribbing failed, causing damage to the house and the renovation work therein." New Beginnings tendered defense of the case to the defendant pursuant to a

commercial general liability insurance policy, and the defendant declined to defend. The plaintiff was awarded a default judgment against New Beginnings for its failure to plead in the amount of $558,007.16. No part of the judgment has been paid.

The record reveals the following additional facts. The plaintiff brought the present action against the defendant under the direct action statute, seeking recovery for the judgment against New Beginnings. In response, the defendant filed an answer and five special defenses, each claiming that the alleged damages were not covered by the insurance policy.[2] Both parties moved for summary judgment. The plaintiff argued that there was no genuine issue of material fact that there is coverage under the policy and that the exclusions are inapplicable. The defendant argued that there is no genuine issue of material fact that two of the policy's "business risk" exclusions—k (5) and (6)—preclude coverage.

Under exclusion k (5), the policy excludes coverage for property damage to "[t]hat particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the 'property damage' arises out of those operations . . . ." Under exclusion k (6), the policy excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

The plaintiff argued that "that particular part" of the property on which New Beginnings and/or its subcontractor were working was "the site grading and foundation work underneath the house . . . [and that] New Beginnings [and/or its subcontractor were] not performing any renovation or other work on the house itself." Thus, the plaintiff contended, it did not seek to recover for the damage to the work being done underneath the house—that work would be excluded under k (5) and (6). Rather, the plaintiff sought to recover for the damage to the house, including renovation work that had allegedly been completed a year before the collapse.

The defendant argued that "that particular part" of the property on which the subcontractor was performing operations was the whole house because the whole house was being lifted. It further argued that the possibility that the house might collapse while being raised was a foreseeable risk in undertaking those operations. The defendant reasoned that all damage that occurs to a house under these circumstances is a "business risk" that falls squarely within exclusions k (5) and (6).

In due course, the trial court issued a memorandum of decision, denying the plaintiff's motion for summary judgment and granting the defendant's motion for sum-

mary judgment. The court stated that the parties agreed that the only issue was whether exclusions k (5) or (6) "preclude[d] coverage for the property damage to the entire house that occurred as a result of the [house's] shifting [off of] the cribbing and collapsing at the time that grading and foundation work was being performed." The court concluded that exclusions k (5) and (6) were clear and unambiguous, and " 'that particular part of real property' " on which New Beginnings or the subcontractor was performing operations was the entire house. As such, the court concluded that these exclusions precluded coverage, and, thus, the defendant had no duty to defend or to indemnify New Beginnings.

The plaintiff appealed to the Appellate Court from the trial court's judgment in favor of the defendant, and the appeal was transferred to this court.

On appeal, the plaintiff contends that the trial court improperly granted the defendant's motion for summary judgment because the court conflated the duty to defend, which arises when there is a *possibility* of coverage, with the duty to indemnify, which arises when there *actually* is coverage. The plaintiff argues that the defendant had a duty to defend New Beginnings because the plaintiff's complaint alleged damage to the house and interior renovation work, which, under a correct interpretation of exclusions k (5) and (6), was separate from the foundation work. Specifically, the plaintiff argues that, under Connecticut law, either the exclusions must be read narrowly, so as not to preclude coverage, or, alternatively, the exclusions are ambiguous and must be construed in favor of coverage. Under either interpretation, the plaintiff contends, there was a possibility of coverage because the exclusions preclude coverage only for the defective work to the foundation itself and not for the damage to the rest of the house. For its part, the defendant contends that the trial court's granting of summary judgment in its favor was proper because exclusions k (5) and (6) unambiguously preclude coverage. We conclude that summary judgment was improper because exclusions k (5) and (6) did not relieve the defendant of its duty to defend New Beginnings in the underlying action.[3]

Whether the trial court properly rendered summary judgment in favor of the defendant is a question of law subject to our plenary review. See *Tannone* v. *Amica Mutual Ins. Co.*, 329 Conn. 665, 671, 189 A.3d 99 (2018). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for

summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

We begin that review by noting that the plaintiff brought this action under our direct action statute, § 38a-321, which places the plaintiff in the shoes of the insured, subject to all the same rights and protections as the insured. See *Samelko* v. *Kingstone Ins. Co.*, 329 Conn. 249, 262, 184 A.3d 741 (2018); *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 149 n.7, 681 A.2d 293 (1996). The plaintiff's claim, then, turns only on whether there was a possibility of coverage that triggered the insurer's duty to defend. See *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 470–71, 870 A.2d 1048 (2005) ("[A]n insurer's duty to defend its insured is triggered without regard to the merits of its duty to indemnify. . . . [So, when] an insurer is guilty of a breach of its contract to defend, it is liable to pay to the insured not only his reasonable expenses in conducting his own defense but, in the absence of fraud or collusion, the amount of a judgment [or settlement] obtained against the insured up to the limit of liability fixed by its policy." (Citation omitted; internal quotation marks omitted.)); *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 600, 840 A.2d 1158 (2004) (in action brought by plaintiff against insurer after settling with insured, plaintiff need not establish insured's liability or resolve coverage dispute if there was possibility of coverage); *Black* v. *Goodwin, Loomis & Britton, Inc.*, supra, 156, 160 (explaining, in action for breach of duty to defend brought under § 38a-321, that, "to recover the amount of the settlement from the insurer, the insured need not establish actual liability to the party with whom it has settled so long as . . . a potential liability on the facts known to the [insured is] shown to exist" and that "insurer may not hide behind the language of the policy after the insurer abandons its insured" (internal quotation marks omitted)).

This is because "the duty to defend is broader than the duty to indemnify. . . . An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, 312 Conn. 714, 739, 95 A.3d 1031 (2014). "The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts [that] bring the injury within the coverage. . . .

If an allegation of the complaint falls even possibly within the coverage, then the [insurer] must defend the insured." (Citation omitted; internal quotation marks omitted.) *Wentland* v. *American Equity Ins. Co.*, supra, 267 Conn. 600. "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends [on] the facts established at trial and the theory under which judgment is actually [rendered] in the case. . . . Thus, the duty to defend is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage . . . ." (Internal quotation marks omitted.) *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 739.

Because all that is necessary to trigger an insurer's duty to defend is a possibility of coverage, any uncertainty as to whether an alleged injury is covered works in favor of providing a defense to an insured, and uncertainty may be either factual or legal. See, e.g., *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001); see also, e.g., *Wentland* v. *American Equity Ins. Co.*, supra, 267 Conn. 601. Factual uncertainty arises when it is unclear from the face of the complaint whether an alleged injury occurred in a manner that is covered by the policy. See *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, supra, 620–22. For example, if a policy was active only for the 2019 calendar year and a complaint did not specify when the alleged injury took place, there would be factual uncertainty as to whether the injury was covered because it is impossible to know from the face of the complaint whether the alleged injury took place during the coverage period. This factual uncertainty would give rise to a duty to defend, lasting at least until a court determined when the injury occurred. See, e.g., id., 621–22.

Legal uncertainty arises when it is unclear how a court might interpret the policy language at issue, and, as a result, it is unclear whether the alleged injury falls within coverage. See id. Legal uncertainty can arise in at least two ways. First, as this court has recognized, ambiguous policy language can give rise to the duty to defend. See, e.g., *Wentland* v. *American Equity Ins. Co.*, supra, 267 Conn. 601. Second, a duty to defend may arise if there is a question as to whether "the cases governing the insurance policy [will] be read to impose coverage in a given situation . . . ." *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, supra, 252 F.3d 620. That is, when there is a split of authority in other jurisdictions as to the meaning of a particular policy provision, and no appellate authority in the relevant jurisdiction has opined on the matter, the uncertainty as to how a court might interpret the policy gives rise to the duty to defend. See *American Best Food, Inc.* v. *Alea London, Ltd.*, 168 Wn. 2d 398, 410, 229 P.3d 693 (2010).

Numerous courts, including this one, have recognized that legal uncertainty can give rise to an insurer's duty to defend. See, e.g., *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, supra, 252 F.3d 620 (under New York law, duty to defend is triggered by uncertainty as to whether "cases governing the insurance policy [will] be read to impose coverage in a given situation"); *Blackhawk-Central City Sanitation District* v. *American Guarantee & Liability Ins. Co.*, 214 F.3d 1183, 1193 (10th Cir. 2000) (under Colorado law, insurer had duty to defend because it could not show that its interpretation of policy exclusion was "only reasonable interpretation"); *Interstate Fire & Casualty Co.* v. *1218 Wisconsin, Inc.*, 136 F.3d 830, 835 (D.C. Cir. 1998) (under District of Columbia law, doubt giving rise to duty to defend "may be legal as well as factual"); *Monarch Greenback, LLC* v. *Monticello Ins. Co.*, 118 F. Supp. 2d 1068, 1078 (D. Idaho 1999) (under Idaho law, duty to defend arises when "the application of an exclusion involves a fairly debatable question of law"); *Makarka* v. *Great American Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000) ("duty to defend may . . . exist [when] the resolution of a contested legal question may lead to covered liability"); *Scottsdale Ins. Co.* v. *Morrow Land Valley Co., LLC*, 411 S.W.3d 184, 193–94 (Ark. 2012) (insurer had duty to defend when word " 'pollutants' " in policy exclusion was ambiguous); *Wentland* v. *American Equity Ins. Co.*, supra, 267 Conn. 601 (word "intoxication" in policy exclusion was "sufficiently ambiguous" to trigger duty to defend); *Sentinel Ins. Co., Ltd.* v. *First Ins. Co. of Hawai'i, Ltd.*, 76 Haw. 277, 289–90, 875 P.2d 894 (1994) (insurer had duty to defend when there was "notable dispute nationwide" on legal coverage question and no appellate court ruling in jurisdiction); *Soto* v. *Country Mutual Ins. Co.*, Docket No. 2-14-1166, 2015 WL 5307297, *10 (Ill. App. September 9, 2015) (holding that insurer had breached its duty to defend when insurer's argument against coverage "require[d] the reconciliation and cross-referencing of several seemingly contradictory provisions" and "coverage dispute [could not] be resolved short of [an] interpretation akin to that which would occur in a declaratory judgment action"), appeal denied, 48 N.E.3d 677 (Ill. 2016); *American Best Food, Inc.* v. *Alea London, Ltd.*, supra, 168 Wn. 2d 407–11 (insurer had duty to defend when cases from other jurisdictions suggested that exclusion did not apply, and there was no controlling case from Washington courts); *Red Arrow Products Co.* v. *Employers Ins. of Wausau*, 233 Wis. 2d 114, 124, 607 N.W.2d 294 (App.) (duty to defend arises from "genuine dispute over the status of the law or the facts . . . at the time of the tender of defense"), review denied, 234 Wis. 2d 177, 612 N.W.2d 733 (2000). But see *Republic Western Ins. Co.* v. *International Ins. Co.*, Docket No. 96-16254, 1997 WL 414566, *2 (9th Cir. July 23, 1997) (decision without published opinion, 121 F.3d 716) (under California law,

when "the only potential for coverage . . . turns on the resolution of a purely legal question of policy interpretation, the insurer does not have a duty to defend").

This court has recognized the first type of legal uncertainty, caused by ambiguous policy language. See *Wentland* v. *American Equity Ins. Co.*, supra, 267 Conn. 601. We have not had occasion, however, to consider the second. We find instructive the following cases from the United States Court of Appeals for the Second Circuit and the Washington Supreme Court, in which the courts concluded that, when no appellate authority of a jurisdiction has interpreted particular policy language, but courts in other jurisdictions have interpreted the same language in a manner that could result in coverage, the legal uncertainty as to how a court might interpret the language may give rise to a duty to defend.[4]

In *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, supra, 252 F.3d 608, the plaintiff clothing companies and their parent company, which were referred to collectively as Hugo Boss in the Second Circuit's decision, were sued for, inter alia, trademark infringement for using the word "BOSS" on certain products, allegedly violating a concurrent use agreement they had with a competitor, and the plaintiffs tendered defense of the case to their insurer, the defendant. See id., 610–12. The insurer declined to defend on the ground that an exclusion precluded coverage because "BOSS" did not fall under the term "trademarked slogans," within the meaning of the policy. (Internal quotation marks omitted.) Id., 612–13. Whether there was coverage, therefore, depended on the meaning of the words "trademarked slogan." Looking to federal case law, the Second Circuit determined that the overwhelming majority of courts had concluded that "trademarked slogan" was unambiguous, which would preclude coverage under the facts of the case. Id., 618–20. The court noted, however, that one United States District Court decision from the Southern District of New York had concluded that "trademarked slogan" was ambiguous. Id., 620–21 and n.11. The Second Circuit concluded that this contrary decision "rendered uncertain the question of whether the courts would deem the term 'trademarked slogan' to be unambiguous."[5] (Emphasis omitted.) Id., 621 n.11.

The court explained that the question of whether "the cases governing the insurance policy [would] be read to impose coverage . . . [would] ultimately be resolved by [the] courts . . . [perhaps] in favor of the insurer, thereby precluding coverage and the duty to indemnify. But until they are, the insurer cannot avoid its duty to defend." Id., 620. The court continued: "It was, therefore, incumbent upon [the insurer] to undertake a defense of Hugo Boss until the uncertainty surrounding the term [trademarked slogan] was resolved. Had [the insurer] sought a declaratory judgment imme-

diately upon Hugo [Boss'] filing of its insurance claim, a court might have eliminated this uncertainty by reading the term as [the insurer] has claimed it should be read . . . . Moreover, it might have done so before [the insurer] expended a great deal of money putting up a defense for Hugo Boss. But until such a ruling issued, the question of whether [the insurer] might be held liable to indemnify Hugo Boss was in doubt. And, given this doubt, [the insurer's] failure to provide a defense . . . was a violation of its contractual duties." Id., 622–23.

Similarly, in *American Best Food, Inc.* v. *Alea London, Ltd.*, supra, 168 Wn. 2d 398, the Washington Supreme Court considered "whether an insurer breached its duty to defend as a matter of law when, relying [on] an equivocal interpretation of case law, it gave itself the benefit of the doubt rather than give that benefit to its insured." Id., 402. After a man was shot nine times by another patron at the plaintiff's nightclub, club security guards "dumped him on the sidewalk." (Internal quotation marks omitted.) Id., 402–403. The defendant, the club's insurer, declined to defend the injured man's action against the club on the ground that an "assault and battery" exclusion in the policy precluded coverage for the incident. Id., 403. Washington courts had never before interpreted the exclusion, but many other courts had, finding a distinction between preassault and postassault negligence. See id., 407–408. Because the complaint in the injured man's underlying action against the club alleged both preassault and postassault negligence, if Washington were to adopt the same distinction, the exclusion would not apply to all of the alleged injuries. The Washington Supreme Court concluded that "[t]he lack of any Washington case directly on point and a recognized distinction between preassault and postassault negligence in other states presented a legal uncertainty with regard to [the insurer's] duty. Because any uncertainty works in favor of providing a defense to an insured, [the insurer's] duty to defend arose when [the injured man] brought [the action] against [the nightclub]." Id., 408.

Applying these principles to the present case, we are mindful that our inquiry is not whether exclusions k (5) and (6) *actually* preclude coverage; nor does this case require us to determine conclusively what those exclusions mean. The only question we must answer is whether there was any *possibility* of coverage at the time New Beginnings tendered defense to the defendant.[6] See, e.g., *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 312 Conn. 739 ("[a]n insurer's duty to defend is triggered if at least one allegation of the complaint falls *even possibly* within the coverage" (emphasis added; internal quotation marks omitted)); *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 817, 67 A.3d 961 (2013) ("the insured is not required to prove actual

liability, only potential liability on the facts known to the [insured]" (internal quotation marks omitted)); *Soto* v. *Country Mutual Ins. Co.*, supra, 2015 WL 5307297, *8 ("[W]e are not determining the ultimate question of coverage. Instead, we are asked to consider whether, when the complaint was presented, there was clearly no potential for coverage under the liability policy." (Emphasis omitted.)); see also *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, supra, 273 Conn. 470–71; *Wentland* v. *American Equity Ins. Co.*, supra, 267 Conn. 601; *Black* v. *Goodwin, Loomis & Britton, Inc.*, supra, 239 Conn. 160; cf. *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 113, 230 A.2d 21 (1967) (because court found insurer breached duty to defend, court found it "unnecessary to reach [the] issue" of whether insurer also had breached its duty to indemnify). More specifically, because the plaintiff alleged damage to "the house and the renovation work therein," we must consider whether legal uncertainty existed regarding the coverage issue in dispute. That is, was it possible, at the time New Beginnings tendered defense to the defendant, that this court, if presented with the issue, could construe "that particular part" in exclusions k (5) and (6) to mean that any portion of the alleged damage would fall outside the scope of the exclusions?

The plaintiff contends that, under Connecticut law, either the exclusions must be construed narrowly, so as not to preclude coverage, or, alternatively, the exclusions are ambiguous and must be construed in favor of coverage. Under either construction, the plaintiff argues, there was a possibility of coverage because the exclusions cover only the defective work on the foundation and do not exclude coverage for the damage to the house or interior renovations caused by the defective work done underneath the house. The defendant contends that, under the facts of this case—in which the insured was required to lift the entire house—exclusions k (5) and (6) unambiguously exclude coverage for all damage to the house caused by the collapse, which was a foreseeable business risk for a business that lifts houses.[7]

Exclusions k (5) and (6) are not unique to the insurance policy in the present case; they are standard exclusions used in policies across the country, and there has been considerable litigation as to the exclusions' meaning and applicability. Courts have generally interpreted the "that particular part" language in one of three ways, adopting either a broad or narrow construction, or concluding that the language is ambiguous. Under the broad interpretation, "that particular part" excludes all damage to the insured's work product caused by the insured's defective work, even if the scope of the damage far exceeds the portion of the property on which the defective work was actually performed. See, e.g., *Jet Line Services, Inc.* v. *American*

*Employers Ins. Co.*, 404 Mass. 706, 711, 537 N.E.2d 107 (1989) (all damage to tank caused by explosion was excluded from coverage, even though contractor was cleaning only bottom of tank at time of explosion). Under the narrow interpretation, "that particular part" applies only to the specific components on which the insured performed defective work and not to wider damage to the insured's work product caused by the defective work. See, e.g., *Mid-Continent Casualty Co.* v. *JHP Development, Inc.*, 557 F.3d 207, 215, 217 (5th Cir. 2009) (under Texas law, exclusion applied only to exterior portions of building that contractor did not properly water seal, not to interior portions that sustained water damage as result). Finally, courts that determine that both, or other, interpretations are reasonable conclude that the language is ambiguous and, as a result, construe the language in favor of the insured. See, e.g., *Cogswell Farm Condominium Assn.* v. *Tower Group, Inc.*, 167 N.H. 245, 249, 252, 110 A.3d 822 (2015).

Consistent with our precedent favoring a narrow interpretation of insurance policy exclusions; see, e.g., *Nationwide Mutual Ins. Co.* v. *Pasiak*, 327 Conn. 225, 239, 173 A.3d 888 (2017) ("[w]hen construing exclusion clauses, the language should be construed in favor of the insured unless [the court] has a high degree of certainty that the policy language clearly and unambiguously excludes the claim" (internal quotation marks omitted)); several courts, including the federal Courts of Appeals for the Fifth and Sixth Circuits, have adopted the narrow interpretation of "that particular part." See, e.g., *Fortney & Weygandt, Inc.* v. *American Manufacturers Mutual Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (adopting reasoning and conclusion of Fifth Circuit's decision in *Mid-Continent Casualty Co.* v. *JHP Development, Inc.*, supra, 557 F.3d 215, 217, with respect to k (6)[8] and noting that words " '[t]hat particular part' . . . are trebly restrictive, straining to the point of awkwardness to make clear that the exclusion applies only to building parts on which defective work was performed, and not to the building generally"); *Mid-Continent Casualty Co.* v. *JHP Development, Inc.*, supra, 218 (under plain reading of policy, exclusions k (5) and (6) apply only to property damage to particular part of property that was subject of defective work). These decisions from federal courts of appeals, combined with Connecticut's preference for interpreting exclusions narrowly and the lack of a Connecticut appellate authority on point, demonstrate that it was possible that this court could adopt a narrow interpretation of exclusions k (5) and (6). In doing so, we might have concluded that "that particular part" of the house on which the defective work was performed was only that portion underneath the house that was not properly supported, leading to the collapse of and damage to the entire house.

Numerous other courts, including the Supreme

Courts of New Hampshire and Missouri, have concluded that the exclusions are ambiguous and, therefore, must be construed in favor of coverage. See *Columbia Mutual Ins. Co.* v. *Schauf*, 967 S.W.2d 74, 80 (Mo. 1998) ("applying the exclusion to real property . . . is far from easy . . . [because] [h]ouses and buildings can be divided into so many parts that attempting to determine which part or parts are the subject of the insured's operations can produce several reasonable conclusions"); *Cogswell Farm Condominium Assn.* v. *Tower Group, Inc.*, supra, 167 N.H. 251–52 (exclusion k (6) was ambiguous because both broad and narrow interpretations were reasonable). Connecticut law also requires that ambiguous insurance policy provisions be construed in favor of coverage. See, e.g., *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 327 Conn. 238–39 ("[W]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.)); see also *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 312 Conn. 740 ("if an ambiguity arises that cannot be resolved by examining the parties' intentions . . . [c]ourts . . . often apply the contra proferentem rule and interpret a policy against the insurer" (internal quotation marks omitted)). These decisions from sister state supreme courts, combined with Connecticut's rule regarding the interpretation of ambiguous policy provisions and the lack of a Connecticut appellate decision on point, suggest that it is also possible that this court might have concluded that exclusions k (5) and (6) are ambiguous and, thus, must be construed against the defendant. In doing so, we might have concluded that the exclusions do not cover the full extent of the damages alleged in the complaint.

Faced with a lack of any Connecticut appellate authority on point and with numerous state supreme and federal appellate court cases that have adopted interpretations of exclusions k (5) and (6) that are consistent with Connecticut law and would favor the plaintiff, the defendant was presented with a legal uncertainty with regard to its duty to defend.[9] Because such an uncertainty works in favor of providing a defense to an insured, exclusions k (5) and (6) did not relieve the defendant of its duty to defend New Beginnings.

Although our case law does not require it, the prudent, if not ordinary, course would have been for the defendant to defend its insured under a reservation of rights and separately pursue a declaratory judgment action to resolve the legal uncertainty at issue. See, e.g., *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 312 Conn. 726–27 ("The purpose of a declaratory judgment action . . . is to

secure an adjudication of rights [when] there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties. . . . [O]ur declaratory judgment statute provides a valuable tool by which litigants may resolve uncertainty of legal obligations." (Internal quotation marks omitted.)); see also General Statutes § 52-29; Practice Book § 17-55. When an insurer declines to defend, it must accept the risk that a court may conclude that, by doing so, the insurer breached its duty to defend. See *Travelers Casualty & Surety Co. of America* v. *Netherlands Ins. Co.*, supra, 739–40 n.25. As the Appellate Court of Illinois has explained: "[The] [d]efendant [insurer] . . . unilaterally determined that there was no possibility of coverage for the damages alleged by the [plaintiff's action] . . . . [The] [d]efendant's unilateral decision . . . was simply a calculated gamble; however, under these circumstances, we conclude that, even if there existed an exclusion that [the] defendant determined barred coverage, it improvidently chose to sit back and do nothing. . . . [When] there [is] a serious dispute . . . regarding whether [a] claim might possibly fall within policy coverage and give rise to a duty to defend, the insurer . . . should . . . seek a declaratory judgment as to its rights and obligations before or pending trial or defend the insured under [a] reservation of rights . . . ." (Citation omitted; internal quotation marks omitted.) *Soto* v. *Country Mutual Ins. Co.*, supra, 2015 WL 5307297, *10.

The defendant relies on four cases—one from a state supreme court and three from trial courts—that, it claims, involve facts and exclusions identical to those in this case. In each case, the court determined that "that particular part" excluded coverage for damage to the entire house. See *Lafayette Ins. Co.* v. *Peerboom*, 813 F. Supp. 2d 823, 834 (S.D. Miss. 2011) ("[u]nlike the insureds in [other cases], [the insured] performed work, not on the foundation only, but on the entire house . . . and this fact distinguishes the present case from . . . cases [in which] a contractor undertakes to work on a discrete part of a structure and defects in his work cause damage to other property"); *Auto-Owners Ins. Co.* v. *Chorak & Sons, Inc.*, Docket No. 07 C 4454, 2008 WL 3286986, *3 (N.D. Ill. August 8, 2008) ("[T]he structure on which [the insured] was working was the entire house . . . that is, [the insured] had to raise the entire house in order to complete the assigned task. . . . [Its] work was allegedly incorrectly performed, and that incorrect performance caused damage to the house. Thus, the damage to the house caused by the operations is excluded from coverage . . . ." (Citations omitted.)); *Grinnell Mutual Reinsurance Co.* v. *Lynne*, 686 N.W.2d 118, 125–26 (N.D. 2004) ("We construe ambiguous contract provisions narrowly; however, this case fits within even a narrow interpretation of the business risk exclusion. . . . The particular part

of real property on which [the insured] was working was the house. Thus, damage to the house resulting from [the insured's] work will not be covered by the policy due to the exclusions included in the policy." (Citations omitted.)); see also *Barber* v. *Berthiaume*, Superior Court, judicial district of New Haven, Docket No. CV-05-4009532-S (October 19, 2009) (48 Conn. L. Rptr. 662, 663) (following *Grinnell Mutual Reinsurance Co.* v. *Lynne*, supra, 126, because it involved "an identical fact pattern and issue"). The defendant argues that, consistent with these cases, exclusions k (5) and (6) clearly and unambiguously exclude coverage for all of the damages alleged in the plaintiff's complaint against New Beginnings and, thus, relieve the defendant of its duty to defend. We are not persuaded.

Although the cases the defendant cites involve similar facts and identical exclusions to those in the present case, the cases are procedurally distinguishable, and the distinction is crucial because the different procedural postures require fundamentally different inquiries with respect to the duty to defend. In this case, the defendant declined to defend the underlying case, and the plaintiff thereafter won a judgment, which it seeks to collect from the defendant. On appeal, our inquiry into whether there was a duty to defend involves a retrospective examination of whether there was *any possibility* of coverage when New Beginnings tendered defense to the defendant. In contrast, in three of the four cases that the defendant cites, the insurers did not decline to defend their insureds; they agreed to defend under a reservation of rights and then brought declaratory judgment actions to determine whether they were required to defend cases that were then pending. See *Lafayette Ins. Co.* v. *Peerboom*, supra, 813 F. Supp. 2d 824; *Auto-Owners Ins. Co.* v. *Chorak & Sons, Inc.*, supra, 2008 WL 3286986, *1; *Grinnell Mutual Reinsurance Co.* v. *Lynne*, supra, 686 N.W.2d 120–21. In those cases, the courts did not consider whether there was a *possibility* of coverage; they considered whether there *actually* was coverage.[10] To determine if there is a duty to defend, a court considers *whether there was* uncertainty as to coverage at the relevant time. To determine if there is a duty to indemnify, as in the cases cited by the defendant, a court *resolves* any uncertainty as to coverage. See, e.g., *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004) ("the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy" (emphasis in original)). The insurer's use of the declaratory judgment action allows the court directly to address the duty to indemnify rather than only the duty to defend. But, as we have explained, the duty to defend is broader than the duty to indemnify, such that it is possible that, in

a given case, if the duty to indemnify has not been resolved, an insurer will have a duty to defend, even if it ultimately has no duty to indemnify. See id. The cases the defendant cites are unpersuasive because they provide an analysis—whether there was actually coverage—distinct from that which we undertake in this case, namely, whether there was any possibility of coverage.[11] Cf. *American Best Food, Inc.* v. *Alea London, Ltd.*, supra, 168 Wn. 2d 411 ("[The insurer] relies [on] *Leingang* v. *Pierce County Medical Bureau, Inc.*, 131 Wn. 2d 133, 930 P.2d 288 (1997), which involved . . . the duty to indemnify, not the duty to defend. We do not find *Leingang* helpful because the duties to defend and indemnify are quite different.").

In sum, we conclude that the trial court incorrectly determined that exclusions k (5) and (6) relieved the defendant of its duty to defend New Beginnings in the underlying action that the plaintiff brought against New Beginnings. At the time New Beginnings tendered defense of the underlying action to the defendant, there was a possibility that the damages the plaintiff alleged were covered by the policy. This possibility existed because of legal uncertainty as to the meaning and applicability of exclusions k (5) and (6), which arose from a combination of the following factors: Connecticut law favors a narrow construction of exclusions and requires that ambiguous provisions be construed in favor of the insured, multiple state supreme court and federal court of appeals decisions have interpreted exclusions identical to those in the present case in a manner favorable to the insured, and no Connecticut appellate authority has interpreted exclusions k (5) and (6). The defendant was not entitled to summary judgment because exclusions k (5) and (6) do not relieve the defendant of its duty to defend. Because the defendant's summary judgment motion concerned only two of its special defenses; see footnote 2 of this opinion; we do not have occasion to consider the merits of the defendant's three remaining special defenses. We leave it to the trial court to evaluate the remaining special defenses, should the defendant pursue them on remand. Cf. W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2019–2020 Ed.) § 61-1, p. 67, authors' comments ("a decision by the Appellate Court reversing summary judgment . . . returns the case to the procedural posture it would have been in if the trial court denied [the motion for] summary judgment").

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** September 9, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although the plaintiff's complaint originally named Main Street America Assurance Company and Atlantic Casualty Insurance Company as defen-

dants, the plaintiff subsequently withdrew its claim against Atlantic Casualty Insurance Company, and that entity is not a party to this appeal. We refer to Main Street America Assurance Company as the defendant.

[2] In its special defenses, the defendant alleged that (1) the damages claimed by the plaintiff were not caused by an "occurrence," as defined by the policy, (2) coverage is precluded by the exclusion in § II B 1 k (5) of the policy, (3) coverage is precluded by the exclusion in § II B 1 k (6) of the policy, (4) coverage is precluded by the exclusion in § II B 1 *l* of the policy, and (5) coverage is precluded by the exclusion in § II B 1 m of the policy. For convenience, we hereinafter refer to § II B 1 k (5) and (6) of the policy as k (5) and (6).

[3] In granting the defendant's motion for summary judgment, the trial court ruled that the defendant had neither a duty to defend *nor a duty to indemnify* New Beginnings in the underlying action. Because we conclude that, with respect to exclusions k (5) and (6), the defendant breached its duty to defend, we need not consider whether it has a duty to indemnify in order to reverse the trial court's judgment as to both duties. Under this court's precedent, an insurer that breaches its duty to defend has breached its contract with the insured, and it may not subsequently argue that the contract absolves it of its duty to indemnify. See, e.g., *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 817, 67 A.3d 961 (2013) (recognizing as "central holding of our cases" principle that insurer that breaches duty to defend is "estop[ped] . . . from seek[ing] the protection of [the] contract in avoidance of its indemnity provisions" (internal quotation marks omitted)); see also *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 149, 156, 681 A.2d 293 (1996) (in action for breach of duty to defend brought under § 38a-321 by plaintiff against insurer, "insurer may not hide behind the language of the policy after the insurer abandons its insured" (internal quotation marks omitted)); *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 113–14, 230 A.2d 21 (1967) ("[t]he [insurer] having, in effect, waived the opportunity which was open to it to perform its contractual duty to defend under a reservation of its right to contest the obligation to indemnify the plaintiff, reason dictates that the [insurer] should reimburse the [insured] for the full amount of the obligation reasonably incurred by it"). This is true regardless of whether the insured brings an action for recovery against the insurer or whether the judgment creditor brings an action against the insurer under § 38a-321. See *Samelko* v. *Kingstone Ins. Co.*, 329 Conn. 249, 262, 184 A.3d 741 (2018) (pursuant to § 38a-321, "the plaintiffs ultimately suffered the actual harm and are thus subrogated to all the rights of the insured"). For the same reason, we do not reach the two other issues presented on appeal, namely, whether the trial court correctly concluded that (1) the phrase "that particular part" in the policy exclusions is unambiguous, and (2) the plaintiff's property damage is excluded from coverage under exclusions k (5) and (6).

[4] We do not suggest that the absence of a controlling decision is, in and of itself, sufficient to give rise to the duty to defend. There must also be sufficient reason to conclude that the court could construe the policy language in favor of coverage. As the Second Circuit explained, "[t]here are, of course, cases in which the policy is so clear that there is no uncertainty in fact or law, and hence no duty to defend. . . . Under some circumstances, the allegations contained in the complaint against the insured will by themselves eliminate all potential doubt and relieve the insurer of any duty to defend. [When], for example, a complaint alleges an intentional tort, and the insurance contract provides coverage only for harms caused by negligence, there would be no uncertainty as to the applicability of the policy exclusion, and hence, no duty to defend the particular [action] brought." (Footnote omitted.) *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, supra, 252 F.3d 620–21; see also *Makarka* v. *Great American Ins. Co.*, supra, 14 P.3d 969–70 ("A duty to defend may . . . exist [when] the resolution of a contested legal question may lead to covered liability against the insured. . . . [Nevertheless, when] coverage turns solely on the interpretation of policy language that has never been reviewed by [the Supreme Court of Alaska], that fact alone is not enough to create a possibility of coverage that require[s] a defense." (Footnotes omitted.)).

[5] We express no opinion as to whether we agree with the Second Circuit that, when a "vast majority" of courts agree as to the meaning of a policy provision, one contrary decision creates uncertainty sufficient to trigger an insurer's duty to defend. *Hugo Boss Fashions, Inc.* v. *Federal Ins. Co.*, supra, 252 F.3d 618–20, 620–21 n.11. As we explain subsequently in this opinion, exclusions k (5) and (6) are standard provisions that are common

in insurance policies across the country, and there is a significant split of authority as to the meaning of the exclusions, which creates a greater degree of uncertainty here than was present in *Hugo Boss Fashions*, *Inc.* Accordingly, we need not decide whether one contrary case gives rise to the duty to defend.

[6] This approach incentivizes insurers to honor the contractual duty to defend insureds in cases in which there is a genuine dispute as to coverage arising from legal uncertainty. If the inquiry in this procedural posture were whether there was *actually* coverage, insurers could decline to defend, wait for judgment or settlement in the underlying action between the plaintiff and the insured, and then litigate the question of indemnity, thereby effectively avoiding the duty to defend. This would deprive insureds of a bargained for contractual right for which insureds pay a premium. It would also be inconsistent with our well established rule that an insurer that breaches its duty to defend cannot then use the contract to escape its indemnity obligations. See *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 813 n.58, 67 A.3d 961 (2013).

Nevertheless, we note that, although an insurer who breaches its duty to defend may not litigate indemnity, the insurer may defend against a claim of breach of the duty to defend, in an action brought by either the insured or the injured party under the direct action statute, by establishing that there is no possibility that coverage existed and no legal uncertainty regarding the existence of such coverage. See, e.g., *Tiedemann* v. *Nationwide Mutual Fire Ins. Co.*, 164 Conn. 439, 444, 324 A.2d 263 (1973) (under predecessor to § 38a-321, insurer was able to argue that there was no possibility of coverage as defense to breach of duty to defend).

[7] The defendant also argues that the purpose of a commercial general liability policy is to provide coverage for unforeseeable business risks, not to protect against foreseeable risks. Because the possibility that the insured might drop a house while lifting it was a foreseeable risk, the defendant contends that it would be contrary to the purpose of a commercial general liability insurance policy to conclude that exclusions k (5) and (6) do not apply to all damage to the house. We are not persuaded. The general purpose of a commercial general liability policy does not render other interpretations of the policy unreasonable. See *Cogswell Farm Condominium Assn.* v. *Tower Group, Inc.*, 167 N.H. 245, 251, 110 A.3d 822 (2015); see also *Mid-Continent Casualty Co.* v. *JHP Development, Inc.*, 557 F.3d 207, 217 n.3 (5th Cir. 2009) ("[i]f insurers believe that this interpretation expands coverage beyond that which commercial general liability insurance policies are supposed to provide, the . . . exclusion can of course be rewritten to make clear that it excludes this sort of property damage from coverage").

[8] In many insurance policies containing identical or very similar exclusions, the exclusions are not lettered and numbered the same as the policy in this case. To avoid confusion, in discussing other cases construing these exclusions, we refer to all of these identical or similar exclusions as k (5) or (6), even if they were not so identified in the cases we discuss.

[9] We recognize that these cases do not involve identical factual situations to the present case. We nevertheless find them instructive because, as we explained, there need only have been a mere possibility of coverage for the plaintiff to prevail. Additionally, the insurer bears the burden of proving that an exclusion applies. E.g., *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 327 Conn. 239. Because the burden lies with the insurer, the plaintiff need only sufficiently rebut the defendant's argument.

[10] The fourth case the defendant cites did not involve a declaratory judgment action, but that case dealt with indemnity, not the duty to defend. Indeed, that case makes no reference to the duty to defend. See *Barber* v. *Berthiaume*, supra, 48 Conn. L. Rptr. 662–63.

[11] We note that, in the present case, the trial court's memorandum of decision suffers from this same deficiency. See *Nash Street, LLC* v. *Main Street America Assurance Co.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-16-6022149-S (December 13, 2018) ("the sole issue to be decided is whether one or both policy exclusions preclude coverage for the property damage to the entire house that occurred as a result of the house shifting [off its] cribbing and collapsing at the time that grading and foundation work was being performed").